## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| DEBRA TROIANO, | : | CIVIL CASE NO. |
| Plaintiff, | : | 3:20-cv-00511-AVC |
| | : | |
| VS. | : | |
| | : | |
| AETNA LIFE INSURANCE COMPANY, | : | |
| Defendants. | : | APRIL 27, 2020 |

### FIRST SUBSTITUTED COMPLAINT

Pursuant to Rule 15, Rule 19, Rule 20 and Rule 21of the Federal Rules of Civil

Procedure, the plaintiff submits her First Substituted Complaint in place of her original

Complaint, naming Aetna Life Insurance Company as the defendant, and dropping the Hartford

Life and Accident Insurance Company, The Hartford Financial Services Group, Inc., and the

Ernst & Young U.S., LLP Long Term Disability Program as defendants in this action.

### I.       PRELIMINARY STATEMENT

1.    This action seeks declaratory, injunctive, and equitable relief, including but not

limited to, an injunction ordering the defendant to retroactively rescind its

termination of the long term disability benefits that the plaintiff had been receiving

from the defendant, Aetna Insurance Company, and to qualify the plaintiff for the

receipt of long term disability benefits and to pay the plaintiff the long term

disability benefits to which the plaintiff had been entitled, and costs and attorney

fees for the defendant's wrongful denial of long term disability benefits to which

the plaintiff was  and continues to be entitled under the terms of a welfare benefit plan, the Ernst & Young US LLP's Long Term Disability Program.

## II.    JURISDICTION

2.    This action is brought under the provisions of the Employee Retirement Income Security Act 29 Title U.S.C. §1132.  Jurisdiction is conferred pursuant to Title 29 U.S.C. §1132(e)(1).

3.    Declaratory, injunctive and equitable relief are sought pursuant to Title 28 U.S.C. §2201, Title 28 U.S.C. §2202, and Title 28 U.S.C. §1331.

4.    Costs and attorney's fees may be awarded pursuant to Title 29 U.S.C. §1132(g).

## III.    VENUE

5.    This action properly lies in the District of Connecticut pursuant to Title 28 U.S.C. §1391(b), Title 28 U.S.C. §1391(c), and Title 29 U.S.C. §1132(e) (2) because the plaintiff resides in this district, the welfare benefit plan, Ernst & Young U.S., LLP Long Term Disability Program, was administered in part in this district, the Ernst & Young U.S., LLP Long Term Disability Program covers employees residing in this district, and the defendant Aetna Life Insurance Company, has a  principal place of business in this district.

## IV.    PARTIES

6.     The plaintiff is a citizen of the United States residing in Monroe, Connecticut, and, as an employee of Ernst & Young U.S., LLP, had been a participant in a welfare benefit plan, Ernst & Young U.S., LLP's Long Term Disability Program.

7.     The defendant, Aetna Insurance Company, underwrites the welfare benefit plan, which Ernst & Young U.S., LLP, provided for its employees, including the plaintiff.

8.     The Ernst & Young U.S., LLP's Long Term Disability Program is administered by the Hartford Life and Accident Insurance Company by agreement with the defendant, Aetna Life Insurance Company.

9.     Ernst & Young U.S., LLP  Long Term Disability Program, is an employee welfare benefit plan within the meaning of ERISA § 3(1), 29 U.S.C. § 1002(1), sponsored by the plaintiff's employer, Ernst & Young U.S., LLP, underwritten by the defendant, Aetna Life Insurance Company and administered by the Hartford Life and Accident Insurance Company by agreement with the defendant, Aetna Life Insurance Company.

10.    The plaintiff is a participant, as defined by ERISA § 3(7), 29 U.S.C. § 1002(7), in the defendant, Ernst & Young U.S., LLP Long Term Disability Program.

**V.  STATEMENT OF FACTS**

11.    The plaintiff had been an employee of Ernst & Young U.S., LLP., since February 3, 1993.

12.   On or about February 23, 2009, the plaintiff could not perform the duties of her position, Retirement Benefits Senior Associate, because of the effects of her Multiple Sclerosis condition from which she had been suffering.

13.   On or about February 23, 2009, the plaintiff started receiving short-term disability benefits, until July 23, 2009, when she began receiving long-term disability benefits under the terms of the Ernst & Young U.S., LLP Long Term Disability Program.

14.   The plaintiff returned to work on October 1, 2009, and continued to work until November 22, 2009, when her Multiple Sclerosis condition prevented her from continuing her employment or any employment.

15.   On November 23, 2009, the plaintiff's long-term disability benefits were restarted because the defendant, Aetna Life Insurance Company, had determined that the plaintiff could not perform the duties of her occupation.

16.   The plaintiff continued to receive long-term disability benefits through July 22, 2011, since Aetna Life Insurance Company had determined that the plaintiff still could not perform the duties of her occupation.

17.   Eligibility under the terms of the Ernst & Young U.S., LLP Long Term Disability Program changed on July 23, 2011, for the plaintiff from her being unable to perform the duties of her occupation to being unable to perform the duties of any reasonable occupation.

18.   From July 23, 2011, through August 15, 2019, the plaintiff continued to receive long-term disability benefits because, as first determined by the defendant, Aetna

Life Insurance Company, then by the Hartford Life and Accident Insurance Company,  the administrator of the Ernst & Young U.S., LLP Long Term Disability Program, she was unable to perform the duties of any reasonable occupation.

19.    On February 3, 2012, Aetna Life Insurance Company, after having the plaintiff undergo a series of medical tests, informed the plaintiff that "[u]pon a complete review of your claim, it was determined that you do meet the definition of being totally disabled from any gainful occupation.  Therefore, your benefits will continue beyond the 24 Months mark, on 9/15/2011…"  *Exhibit 1.*

20.    The plaintiff's physical condition has not improved since February 3, 2012, but has substantially worsened.  *Exhibit 2.*

21.    By letter dated August 14, 2019, the defendant, Aetna Life Insurance Company, acting through the Hartford Life and Accident Insurance Company, informed the plaintiff that "[w]e…have determined that you do not meet the policy definition of Disability.  Because of this, Long Term Disability (LTD) benefits are not payable to you beyond 8/14/19."  *Exhibit 3.*

22.    The defendant, Aetna Life Insurance Company, acting through the Hartford Life and Accident Insurance Company, terminated the plaintiff's long-term disability benefits based on a distorted view of the plaintiff's medical records, ignoring the overwhelming medical evidence regarding the plaintiff's treatment with Allan B. Perel, M.D., Fellow, American Academy of Neurology, for Multiple Sclerosis.  *Exhibit 2.*

23. The plaintiff appealed the decision of the defendant, Aetna Life Insurance Company, acting through the Hartford Life and Accident Insurance Company, to terminate her long-term disability benefits on or about October 7, 2019, within the 180-day time limit to appeal.

24. The plaintiff submitted evidence with her appeal in the form of medical records, and medical opinions completely refuting the reasons advanced by the defendant, Aetna Life Insurance Company, acting through the Hartford Life and Accident Insurance Company,  for terminating the plaintiff's long-term disability benefits. *Exhibit 4.*

25. The plaintiff submitted on or about February 18, 2020, an updated report from Dr. Perel, dated February 12, 2020, to the Hartford Life and Accident Insurance Company, which was administering the Ernst & Young U.S., LLP Long Term Disability Program on behalf of the defendant, Aetna Life Insurance Company, refuting the reasons on which it based the termination of the plaintiff's long-term disability benefits.  *Exhibit 2.*

26. In ruling on the plaintiff's appeal, the unidentified "independent physicians who specialize in Psychology and Neurology," disregarded the medical evidence and expert opinion of Dr. Perel, who found that the plaintiff could not perform the duties of any gainful occupation.

27. The records provided the Hartford Life and Accident Insurance Company, which was administering the Ernst & Young U.S., LLP Long Term Disability Program on

behalf of the defendant, Aetna Life Insurance Company, by Dr. Perel fully supported the continuation of the long-term disability benefits which the plaintiff was receiving from July 23, 2009, to August 14, 2019.

28. In fact, the records provided to the Hartford Life and Accident Insurance Company, which was administering the Ernst & Young U.S., LLP Long Term Disability Program on behalf of the defendant, Aetna Life Insurance Company,, by Dr. Perel in support of the plaintiff's appeal from the decision to terminate her long-term disability benefits were more extensive than the previous documents which had provided Aetna on which it had approved the continued payment of long-term disability benefits to the plaintiff under the "inability to perform the duties of any reasonable occupation standard."

29. By letter dated March 10, 2020, the Hartford Life and Accident Insurance Company, which was administering the Ernst & Young U.S., LLP Long Term Disability Program on behalf of the defendant, Aetna Life Insurance Company, denied the plaintiff's appeal of the decision to terminate her long-term disability benefits. *Exhibit 5*.

30. The denial of the plaintiff's appeal by the Hartford Life and Accident Insurance Company, which was administering the Ernst & Young U.S., LLP Long Term Disability Program on behalf of the defendant, Aetna Life Insurance Company, ignored the medical records and opinion of Dr. Perel.

31.   The Hartford Life and Accident Insurance Company, which was administering the Ernst & Young U.S., LLP Long Term Disability Program on behalf of the defendant, Aetna Life Insurance Company, disregarded the opinion of Dr. Perel, a Fellow of the American Academy of Neurology, relying instead on illegitimate reasons supplied by the unidentified "independent reviewers."

32.   As a result of the plaintiff's physical condition, she has been totally disabled from performing the duties of any reasonable occupation from July 23, 2009, except for a brief period when the plaintiff attempted to return to work from October 1, 2009, to November 22, 2009.

33.   The plaintiff satisfied all conditions necessary for qualifying under the terms of the Ernst & Young U.S., LLP Long Term Disability Program for the continued receipt of long-term disability benefit payments from August 14, 2019.

## VI.   CAUSE OF ACTION (CLAIM FOR BENEFITS PURSUANT TO § 502(a) (1)(B) OF ERISA AGAINST DEFENDANT, AETNA LIFE INSURANCE COMPANY

34-66.   The plaintiff incorporates as if re-alleged paragraphs 1 through 33.

67.   Despite the plaintiff satisfying the conditions contained in the Ernst & Young U.S., LLP Long Term Disability Program, which the Hartford Life and Accident Insurance Company, was administering on behalf of the defendant, Aetna Life Insurance Company, the defendant, Aetna Life Insurance Company arbitrarily and capriciously denied the long-term disability benefits to which the plaintiff was entitled.

68.     The plaintiff has exhausted all remedies provided to her under the terms of the Ernst & Young U.S., LLP Long Term Disability Program.

69.     By wrongfully terminating the plaintiff's long-term disability benefits, the defendant, Aetna Life Insurance Company, violated the provisions of the Employee Retirement Income Security Act.

70.     ERISA § 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B) permits a plan participant to bring a civil action to recover benefits due to her under the terms of a welfare benefit plan, to enforce her rights under the terms of a welfare benefit plan, and/or to clarify her rights to future benefits under the terms of a welfare benefit plan.

71.     From August 14, 2019, to the present date and beyond, the plaintiff has been entitled to long-term disability benefits under the Ernst & Young U.S., LLP Long Term Disability Program.

72.     By terminating the plaintiff's long-term disability benefits under the Ernst & Young U.S., LLP Long Term Disability Program, from August 14, 2019, to the present date, and beyond, the defendant, Aetna Life Insurance Company, violated the terms of the Ernst & Young U.S., LLP Long Term Disability Program, and the plaintiff's ERISA rights.

## VII.   <u>PRAYER FOR RELIEF</u>

WHEREFORE, THE PLAINTIFF PRAYS THAT THIS COURT:

a)  Declare that the defendant, Aetna Life Insurance Company, violated the terms of the Ernst & Young U.S., LLP Long Term Disability Program by terminating the plaintiff's long-term disability benefits from August 14, 2019, to the present date.

b)  Order the defendant, Aetna Life Insurance Company, to pay long-term disability benefits to the plaintiff pursuant to the terms of the Ernst & Young U.S., LLP Long Term Disability Program from August 14, 2019, together with prejudgment interest on each and every such payment through the date of judgment is entered herein.

c)  Award the plaintiff reasonable attorney fees and costs of suit incurred herein pursuant to ERISA § 502(g), 29 U.S.C. § 1132(g).

d)  Provide such other relief as the Court deems equitable and just.

THE PLAINTIFF – DEBRA TROIANO

BY<u>/s/ Thomas W. Bucci</u>
Thomas W. Bucci
Fed. Bar #ct07805
WILLINGER, WILLINGER & BUCCI, P.C.
1000 Bridgeport Avenue, Suite 501
Shelton, CT 06484
Tel: (203) 366-3939
Fax: (475)269-2907
Email: thomaswbucci@outlook.com

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on April 29, 2020, a copy of foregoing *First Substituted Complaint* was filed electronically and served on anyone unable to accept electronic filing.  Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.

PLAINTIFF – DEBRA TROIANO

BY:  /s/<u>Thomas W. Bucci</u>
        Thomas W. Bucci, Esq.



PLAINTIFF'S EXHIBIT 2

**Allan B. Perel, M.D.**
Director
**Ludmila Feldman, M.D.**

**Alpha Neurology, P.C.**
27 New Dorp Lane
Staten Island, NY 10306
Phone (718) 667-3800
Fax (718) 667-3590

**Marina Amitina,**
**Ida Altshuler, M.**



Laboratory
February 12, 2020

The Hartford
P.O. BOX 14578                 Fax # 833-357-5152
Lexington, KY 40512-4578.

**Re:** Debra Troiano Claim # 2015099

To Whom It May Concern:

Debra Troiano has been under my neurological care for a number of years with a diagnosis of relapsing multiple sclerosis. The patient's diagnosis was made on clinical grounds and confirmed with imaging studies in the form of an MRI. Her initial manifestation was that of dexterity problem, short-term memory issues and marked fatigue. The patient had been placed on multiple disease-modifying therapies including Copaxone, Avonex and Tecfidera. The patient has a past history of depression, bipolar disorder, and gastroesophageal reflux disorder. Because of her initial severe fatigue and cognitive problems, the patient had a formal neuropsychological evaluation by Dr. Ezra Gampel. Dr. Gampel's extensive neuropsychological evaluation in 2011 demonstrated that the patient had significant problems with cognition and doing multitasking and complicated tasks. The patient's cognitive problems were related to her multiple sclerosis. In addition, the patient had been on multiple psychotropic agents for her depression/bipolar disorder. The patient has been followed in my practice since 2007. She has had repeated MRIs. I have felt as a specialist in the field of multiple sclerosis and as a board certified neurologist that she was not able to do any gainful employment. This was my opinion with regard to her social security disability assessment. The patient has had radiographical testing with her having an MRI of the brain demonstrating new lesions. With these new lesions, I suggested disease-modifying therapy modifications for her condition. The patient also has had complications including gastrointestinal problems with the medications. During many of her visits, the patient has both documented and through my multiple interactions with the patient in my recollections described severe fatigue in addition to her cognitive issues. The patient's depression has been treated and she is being followed closely for this.

It is my opinion that the patient's cognitive issues with associated fatigue and history of superimposed depression would not allow the patient to do any reasonable occupation. As noted above, this is my opinion with regard to her social security disability claim. The patient has been continued to be seen in my office. She has had significant problems with side effects of medications including marked diarrhea, which again is another contributing factor to her disability. She has been having intractable diarrhea and would

Allan B. Perel, M.D.
Director
Ludmila Feldman, M.D.

**Alpha Neurology, P.C.**
27 New Dorp Lane
Staten Island, NY 10306
Phone (718) 667-3800
Fax (718) 667-3590

Marina Amitina, M.D
Ida Altshuler, M.D.

probably need a change in medication.  The patient also had an MRI of the cervical spine demonstrating significant spondylotic changes with moderate cord compression at the C4-5 level.  On examination, the patient has had weakness in the past and has had waxing and waning symptomatology throughout the course of her disease.

In my medical opinion, the primary disability is related to her fatigue, cognitive problems.  I do not feel that the patient has improved with regard to her cognitive problems from 2011 neuropsychological evaluation and by my clinical exam despite the fact that she is oriented x3, I feel the patient's symptoms have actually worsened with regard to her description of severe fatigue and difficulty doing multitasking.  I have reviewed The Hartford Insurance Company, Fourth Page densely annotated note with regard to disability and respectfully disagreed with this.

It is difficult to do this on a point by point basis for these four pages of note; however, clearly the patient has had documented mobility problems at times, significant radicular complaints with numbness and tingling and has positive MRI of the cervical spine.

The patient has had issues with regard to medications, i.e. diarrhea in the past and is presently taking Tecfidera with its own group of side effects including flushing and gastrointestinal upset.

The patient's cognitive issues with superimposed fatigue are a major cause of disability in the fields of multiple sclerosis.  Two thirds of patients with multiple sclerosis are not gainfully employed because of the fatigue and cognitive problems.

After reading your extensive report, repeated neuropsychological testing is not usually performed in patients once the diagnosis and cognitive issues are demonstrated.  Her evaluation for cognitive abnormality was in 2011.  In my medical opinion, I feel the patient has total disability from doing any gainful work based on her marked fatigue and cognitive problems.

The patient has had progression of lesion load on her MRI and the last MRI in September 2019 does demonstrate (which I have personally reviewed) two new pathologically enhancing lesions and left cerebral white matter.  As you know, the left cerebral hemisphere is an area that deals significantly with speech and language production and the patient did have changes in that area.  Those changes in that area precipitated me to consider different disease-modifying therapies for multiple sclerosis specifically using monoclonal antibodies with significant immunological, i.e. risk of infection and neoplasm.  I am a neurologist and do not feel comfortable commenting with regard to depression in this case.

**Allan B. Perel, M.D.**
**Director**
**Ludmila Feldman, M.D.**

**Alpha Neurology, P.C.**
27 New Dorp Lane
Staten Island, NY 10306
Phone (718) 667-3800
Fax (718) 667-3590

**Marina Amitina, M.D**
**Ida Altshuler, M.D.**

I strongly feel on the basis of her neuropsychological exam, cognitive issues, complaints of fatigue and formal neuropsychological testing in 2011 that the patient is totally disabled at present from any gainful employment.

Thank you for your consideration in this matter.


Allan B. Perel, M.D.
Fellow, American Academy of Neurology

ABP/sm-1018



PLAINTIFF'S
EXHIBIT
3



**THE HARTFORD**

PO Box 14869
Lexington, KY 40512

Phone: 888-301-5615
Fax: 833-357-5153

August 14, 2019

DEBRA TROIANO
34 GRIST MILL RD
MONROE CT - 06468

Dear Debra,

We have completed our review of your claim for benefits and have determined that you do not meet the policy definition of Disability. Because of this, Long Term Disability (LTD) benefits are not payable to you beyond 8/14/19.

Your Long Term Disability Policy includes the following provisions:

**Test of Disability**
From the date that you first become disabled and until Monthly Benefits are payable for 24 months, you will be deemed to be
disabled on any day if:
* you are not able to perform the material duties of your own occupation solely because of: disease or injury; and
* your work earnings are 80% or less of your adjusted predisability earnings.

After the first 24 months that any Monthly Benefit is payable during a period of disability, you will be deemed to be disabled
on any day if you are not able to work at any reasonable occupation solely because of:
* disease; or
* injury.

If your own occupation requires a professional or occupational license or certification of any kind, you will not be deemed to
be disabled solely because of the loss of that license or certification.

**Reasonable Occupation:**
This is any gainful activity for which you are; or may reasonably become; fitted by: education; training; or experience; and
which results in; or can be expected to result in; an income of more than 60% of your adjusted predisability earnings.

Your period of disability ends on the first to occur of:
* The date Aetna finds you are no longer disabled or the date you fail to furnish proof that you are disabled.
* The date Aetna finds that you have withheld information which indicates you are performing, or are capable of performing,
the duties of a reasonable occupation.
* The date you refuse to be examined by, or cooperate with, an independent physician or a licensed or certified health care
practitioner, as requested.
* The date you cease to be under the regular care of a physician.
* The date an independent medical exam report or functional capacity evaluation fails to confirm your disability.
* The date you reach the end of your Maximum Benefit Duration.
* The date you are not undergoing effective treatment for alcoholism or drug abuse, if your disability is caused

to any
extent by alcoholism or drug abuse.
* The date your condition would permit you to work, or increase the number of hours you work, or the number or type of
duties you perform in your own occupation, but you refuse to do so.
* The date of your death.

We based our decision to terminate your claim on policy language. All the papers contained in your file were reviewed as a whole. This included:

* The Attending Physician's Statement signed by Dr. Perel on 1/14/19;
* Office notes and medical records from Dr. Perel;
* Response from Dr. Perel dated 7/22/19;
* Review of your file by our Medical Clinical Case Manager;
* Employability Analysis information completed by a Vocational Rehabilitation Clinical Case Manager on 8/9/19;
* Your education, training and experience described on the Work and Education History form received 8/3/09 and 5/9/2011;

The information in your file shows that you last worked for Ernst & Young on 11/23/2009 as a Retirement Benefits Senior Associate. You have received LTD benefits for the period 7/23/2009 to 7/22/2011 because you were unable to perform the duties of Your Occupation.

The definition of Disability in your contract changed as of 7/23/2011. As of this date, you must be disabled from any Reasonable Occupation to continue to receive LTD benefits. Your benefits have continued and have been paid through 7/31/2019because you were unable to perform the duties of any Reasonable Occupation.

When we investigated whether you could perform the duties of any Reasonable Occupation, we considered your prior education, training and experience. The information you provided to us shows that you have a high school education. You have worked for Ernst & Young for 16 years in various positions including secretary, executive secretary, administrative assistant, benefits specialist and senior benefits specialist.

We also reviewed all of the medical information in your file to decide if you continue to meet the definition of Disability. We have medical information from each of the doctors listed in this letter.

Your 7/19/18 brain MRI states that there are no enhancing lesions. No additional lesions. Moderate maxillary sinus inflammatory changes and adenoid hypertrophy. Your 7/19/18 cervical spine MRI states that there is stable nonenhancing plaque at the C3 level. There are no additional plaques identified. Multilevel degenerative changes similar to prior study. There is associated central canal stenosis resulting in mild cord impingement at C4-5 and C5-6. There is foraminal stenosis at multiple levels. Your 7/19/18 thoracic spine MRI states there are no cord abnormalities identified.

Your 8/1/18 office visit with Dr. Perel notes that you want to get off Tecfidera. Your main Multiple Sclerosis symptom is cognitive issues - memory issues, trouble getting words out, etc. She finds no impairment in mobility. Unchanged fatigue. Your physical exam is unremarkable. Your assessment is Multiple Sclerosis (MS) without exacerbation, stable, and significant side effects with Tecfidera. He notes your MRI of the brain and cervical spine show stable lesions, and your MRI of the thoracic spine shows no lesions. You discussed meds Gilenya vs, Aubaglo. The doctor notes you do not want higher efficacy agents at this time. The plan is to discontinue Tecfidera once Aubaglo is approved.

Dr. Perel signed an Attending Physician's Statement on 1/14/19 stating your diagnosis is Multiple Sclerosis. Your medications include Tecfidera. Your treatment summary is office visits, MRI testing, and continue medication. Your symptoms include weakness of upper extremity and lower extremity, fatigue, cognitive issues. The doctor states you have no ability to work.

Your 6/19/19 office visit with Dr. Perel notes that you feel stable of Tecfidera, and that you do experience persistent diarrhea with this medication. He notes you have episodic paresthesias. You complain of episodic pain throughout your body. Your physical exam is notable for a positive Tinel's sign at your bilateral wrists, increased but normal reflexes and rotary nystagmus.  Your diagnoses include Multiple Sclerosis, Paresthesia/weakness and fatigue. Your plan is to continue on Tecfidera and to have an MRI of the brain/cervical spine to assess new or enhancing MS lesions. He notes that you would like to hold on the MRI at this time. He advised you to follow up with your primary care physician regarding the positive review of system findings. He also suggested a GI evaluation for your persistent diarrhea.

Your file was referred to our Medical Clinical Case Manager, who reviewed your medical records. A letter was sent to Dr. Perel noting that there is a lack of available medical evidence for functional impairment to general or specific activities. There are no observed or documented deficits in manual dexterity, fine motor skills, upper extremity strength or lower extremity strength. There are no noted gait/station abnormalities, or noted

inability to operate hand/foot controls. No intolerance to sitting, standing or walking is reported or observed. There is no documentation that you were observed using any assistive device or brace, and you are not noted as being accompanied by anyone in your office visits. There is no documented report or observation of cognitive impairment or impairing medication effects. There is no documentation that you were observed with mental or physical tiredness, weariness, sleepiness, drowsiness, exhaustion or lethargy.

We received a signed response from Dr. Perel on 7/22/19 indicating his agreement with this assessment.

Based on this, we have determined that you do not have any physical restrictions or limitations at this time.

Using this information, a Vocational Rehabilitation Clinical Case Manager performed an employability analysis which showed that there are a number of occupations for which you are qualified that are within your physical capabilities. The salaries for these occupations are above 60% ($4236.27) of your Pre-Disability Earnings, as required by the definition of Reasonable Occupation. This listing of occupations is a sample of the occupations for which you are qualified:

* Assignment Clerk          Salary: $4246.67
* Repair-Order Clerk        Salary: $4246.67
* Group-Sales Representative  Salary: $6279.87

Based on this information, we have concluded that you are not prevented from performing the essential duties of any Reasonable Occupation. Because of this, you do not meet the policy definition of Disability and your LTD benefits will terminate effective 8/15/19.

We understand that you have been approved for Social Security Disability (SSD) benefits. However, our disability determination and the SSD determination are made independently and are not always the same. The difference between our determination and the SSD determination may be driven by the Social Security Administration (SSA) regulations. Or, it may be driven by the fact that we have information that is different from what SSA considered. We have not been provided with the basis for the SSD determination, and the evidence that was relied on for the SSD determination has not been identified to us. We find that you are not (or you are no longer) eligible for LTD benefits under the Disability Plan.

In making our claim decision, we do not waive any rights or defenses available to us under the plan. We will review any additional information you care to submit, such as medical information from all physicians who have treated you for the condition(s), including but not limited to:
* a detailed narrative report for the period 1/1/18 through present outlining the specific
  physical and/or mental limitations related to your condition that your doctor has placed on you as far as gainful activity is concerned; physician's
  prognosis, including course of treatment, frequency of visits, and specific medications prescribed;
* diagnostic studies conducted during the above period, such as test results, X-rays, laboratory data, and clinical findings;
* any information specific to the condition(s) related to your disability claim that would assist with the evaluation of your disability status; and
* any other information or documentation that would assist us with the review of your claim.

If I don't agree, what can I do next?
If this disability claim has been denied in whole or in part, or if you feel your claim should be certified for a longer period, you can ask us to look at it again. This is called an Appeal.
* You have 180 days from August 14, 2019 to ask us to review your claim by sending a written request. Be sure to send that on time so you don't lose your right to have us review our decision.

To ask for a disability claim review, fax us a letter at 1-855-733-1262 or send it to this address:

Aetna Life Insurance Company
P.O. Box 14578
Lexington, KY 40512-4578
1-855-733-1262

Make sure your request includes:
* Your name and employee ID number (if you have one)
* The name of your employer
* Your disability claim number
* Any information you didn't already send us. This could mean medical records, test results or anything else that shows why you weren't able to do
  your job.
If you'd like copies of the documents we already have, you can ask for that in your request.

In most cases, you'll have our appeal decision within 45 days from when we get your request. If we're not able

to make an appeal decision within 45 days, we'll send you an update to tell you why.

If you don't agree with our appeal decision, you can file a law suit under section 502(a) of a law called ERISA. Generally, after we make a final decision on your appeal, you have up to 2 years to take legal action to recover payment if you disagree with our decision, but no more than 3 years from when we first denied your eligibility. Your policy should be referenced for the specific time limitations that apply to your claim.

Below are guidelines that were relied upon in making this determination.

Not Disabled Any Occupation Standard:
On an ongoing basis, the claim owner should compare the:
The claim owner should recommend a claim be terminated at or beyond Test Change when:
The role of the Analyst, Disability Benefit Manager, Director, and Appeals Specialist is to undertake fair and accurate claims assessments with the goal of paying all valid claims. Financial self-interest, either the company's or that of the Claims or Appeals staff, must not influence individual claim management.
Required ERISA notice:
The Employee Retirement Income Security Act of 1974 (ERISA) allows us to make a final decision no more than 45 days after it receives your timely appeal. The time for final decision may be extended for one additional 45 day period provided that, prior to the extension, we notify you in writing that an extension is necessary due to special circumstances, identifies those circumstances and gives the date by which it expects to render its decision.

If your claim is extended due to your failure to submit information necessary to decide your claim on appeal, the time for decision shall be tolled from the date on which the notification of the extension is sent to you until the date we receive your response to the request. We may also toll the time for a decision to allow you a reasonable opportunity to respond to new or additional evidence or a new or additional rationale. Tolling will begin on the date that we provide you with new or additional evidence or a new or additional rationale, and end when we receive the response or on the date by which we requested a response, whichever comes first.

- < >Policy definition of Disability, and </>Medical and vocational information </>Occupation(s) are identified that the employee is qualified to perform within the confirmed restrictions and limitations

If you have questions or need help, you can call us at **888-301-5615** between 8:00 AM and 8:00 PM ET, Monday through Friday or visit us online at **https://abilityadvantage.thehartford.com**. We're here to help.

Sincerely,

Debbi Featherstone/eaw
Senior Technical Specialist

The Hartford® is The Hartford Financial Services Group, Inc. and its subsidiaries, including underwriting companies Hartford Life and Accident Insurance Company and Hartford Fire Insurance Company. Home Office is Hartford, CT. The Hartford is the administrator for certain group benefits business written by Aetna Life Insurance Company and Talcott Resolution Life Insurance Company (formerly known as Hartford Life Insurance Company). The Hartford also provides administrative and claim services for employer leave of absence programs and self-funded disability benefit plans.

Enclosure:
Availability of Language Services



**Debra A. Troiano**
**34 Grist Mill Road**
**Monroe, CT 06468**

October 7, 2019

Aetna Life Insurance Company
P. O. Box 14578
Lexington, KY 40512-4578

Re: Debra A. Troiano
      Claim #2015099, Ernst & Young employee ID 1014644

To Whom it May Concern:

In response to your letter dated August 14, 2019, I submit this letter to appeal the decision to
terminate my disability benefits and close my claim.

I believe the determination to terminate my benefits was based primarily on a clerical error in the
doctor's office. They received a narrative dated July 18, 2019 from The Hartford outlining their
assessment that there is a lack of medical evidence and documentation of my functional
impairment. It went on to ask that if he was in agreement with the assessment to sign, date and
return to them. This narrative letter was then inadvertently signed and returned by a clerk without
being reviewed or approved. I am enclosing a signed response from Dr. Perel with its attachments
as it relates to this matter.

Page two of your termination letter to me dated August 14, 2019 states: "The definition of
Disability in your contract changed as of July 23, 2011. As of this date, you must be disabled from
any Reasonable Occupation to continue to receive LTD benefits." I am enclosing a letter from
Aetna to me dated February 3, 2012 (approximately 7 mos. later) which determined that I still met
the definition of being totally disabled.

If you need any additional information, please call Debbie Miniero, office manager at Alpha
Neurology, at 718-667-3800 ext. 100.

Sincerely,

Debra A. Troiano

Debra A. Troiano

Allan B. Perel, M.D.
Director
Ludmila Feldman, M.D.

# Alpha Neurology, P.C.

27 New Dorp Lane
Staten Island, NY 10306
Phone (718) 667-3800
Fax (718) 667-3590

Marina Amitina, M.D
Ida Altshuler, M.D.



*September 27, 2019*

*The Hartford*
*P.O. Box 14869*
*Lexington, KY 40512*

*Re: Debra A. Troiano, DOB*
*      Claim # 2015099*

*To Whom It May Concern:*

*It has come to our attention that an error on our part has resulted in the termination of the above-named patient's disability claim. Mrs. Troiano has informed us that the time frame for a less official resolution to this matter has passed due to the change in claim status from open to closed and that therefore she must and will be submitting an appeal. While it is unfortunate for all parties concerned, we will provide the information and documentation you may require to re-open her claim.*

*The narrative we received from your RN for clarification of Mrs. Troiano's functional capacity was inadvertently signed and returned by a clerk in our office without any review or approval. There are several inconsistencies in your narrative as compared with our documentation of Mrs. Troiano's condition. The assessment that there is a lack of both medical evidence and documentation is contradicted by several items of documentation in her file.*

1. *The assessment stated that no upper or lower extremity strength deficits were noted. Upper and lower extremity weakness was reported on OV notes, APSs dated 10/3/10, 11/19/14, 12/5/16, 1/14/19, and on Capabilities & Limitations Worksheets dated 10/3/10 and 7/17/11.*

2. *The assessment stated that no sitting or standing intolerance is reported. Inability to sit or stand for long periods of time was reported on APS dated 12/5/16 and on Capabilities & Limitations Worksheet dated 10/3/10.*

~~DATE~~ September 27, 2019

3. *The assessment stated that there was no documentation of fatigue. Mrs. Troiano's symptoms of fatigue were noted in OV notes and on APSs dated 11/19/14, 12/5/16, 1/14/19.*
4. *The assessment stated that there is no documented report of cognitive impairment. Mrs. Troiano's cognitive impairment remains unchanged as originally determined and reported in the neuropsychological evaluation by Dr. Ezra Gampel conducted at Aetna's request, a copy of which is enclosed. Her cognitive issues have also been documented in OV notes, APSs dated 10/3/10, 11/19/14, 1/14/19, and on Capabilities & Limitations Worksheet dated 10/3/10.*

*A comparison MRI Brain was performed on September 5, 2019 suggesting new pathological enhancement in left cerebral white matter. Comparison C-Spine and T-Spine MRIs were also conducted on September 5, 2019. The results of these MRIs are enclosed. Mrs. Troiano went for blood work on August 21, 2019. She has seen a GI physician and underwent an endoscopy on September 11, 2019.*

*Due to Mrs. Troiano's diagnosis of multiple sclerosis she suffers from severe cognitive impairment and fatigue. She is also unable to sit or stand for long periods of time due to lack of neuromuscular control. She has constant numbness and tingling, balance disorder and back pain due to multiple disc bulges as reported on C-Spine and T-Spine MRI reports. Mrs. Troiano also has Tinel's sign at bilateral wrists.*

*If you have any additional questions, please call my office manager at 718-667-3800, Extension 100 or you can email her at debbie.miniero@alphaneuropc.com.*

*Sincerely,*

*Allan B. Perel, MD*
*Fellow, American Academy of Neurology*



PO Box 14560
Lexington, KY 40512-4560
SHANNON MOORE
Senior Technical Specialist
Phone: 1-866-326-1380
Fax: 1-866-667-1987

02/03/2012

DEBRA TROIANO
7760 AMBOY ROAD
STATEN ISLAND NY - 10307

| | |
|---|---|
| Group Control No: | 0818967 |
| Employer: | Ernst & Young U.S. LLP |
| Employee: | MS. DEBRA TROIANO |
| Disability Claim Case No: | 2015099 |

Dear Ms. Troiano:

The Ernst & Young U.S. LLP LTD group policy is underwritten by Aetna Life Insurance Company (Aetna).

Based upon the Plan, after the 24 Months mark of LTD benefits, you must meet the following definition of total disability:

*Test of Disability*
*From the date that you first become disabled and until monthly benefits are payable for 24 months, you will be deemed to be disabled on any day if:*

· *you are not able to perform the material duties of your own occupation solely because of: disease or injury; and*
· *your work earnings are 80% or less of your adjusted predisability earnings.*

*After the first 24 months that any monthly benefit is payable during a period of disability, you will be deemed to be disabled on any day if you are not able to work at any reasonable occupation solely because of:*

· *disease; or*
· *injury.*

*If your own occupation requires a professional or occupational license or certification of any kind, you will not be deemed to be disabled solely because of loss of that license or certification.*

Upon a complete review of your claim, it was determined that you do meet this definition of being totally disabled from any gainful occupation. Therefore, your benefits will continue beyond the 24 Months mark, or 09/15/2011. According to the plan requirements, you will continue to receive LTD benefits as long as you continue to meet the Plan definition and remain under the regular care of a licensed physician that is appropriate for your condition. We will continue to monitor your disability status by periodically requesting updated medical and/or other documentation to verify your continued eligibility for Long-Term Disability benefits.

If you have any questions, please call 1-866-326-1380.

Sincerely,

SHANNON MOORE
Senior Technical Specialist
Aetna Life Insurance Company



000010 J01114A 000027 (1)

Claim # 2015099

Claim Number: 2015099

**aetna**  **Attending Physician Statement**
Complete and sign the form using BLUE or BLACK ink.

Aetna Life Insurance C
PO Box 14560
Lexington, KY 40512-4
Fax: 1-866-667-1987

The Genetic Information Nondiscrimination Act of 2008 (GINA) prohibits employers and other entities covered by GINA Title requesting or requiring genetic information of an individual or family member of the individual, except as specifically allowed law.  To comply with this law, we are asking that you not provide any genetic information when responding to this request for medical information. 'Genetic information' as defined by GINA, includes an individual's family medical history, the results of individual's or family member's genetic tests, the fact that an individual or an individuals' family member sought or received services, and genetic information of a fetus carried by an individual or an individual's family member or an embryo lawfully h an individual or family member receiving assistive reproductive services. *Please note that it is appropriate under GINA t provide family medical history when an employee is requesting leave to care for a family member.*

**1. Patient Instructions** – The Physician will complete Sections 2 through 7.
The Patient will complete Sections 1 and 8.
The Patient should also fill in their name at the top of Pages 2 and 3.

The *Patient* is responsible for completing this section and for **ensuring that their Attending Physician completes the** remainder of this statement. The Patient is responsible for paying any fees that may be charged for completion of thi by their physician. **If you have any questions, please call** 1-866-326-1380.

(a) Control Number _____

(b) TROIANO, DEBRA A.                  1960
Patient Name (Last, First, Middle Initial)        Social Security Number        Year of Birth        Height        Weig

(c) Patient Gender ☐ Male  ☑ Female

(d) 7760 Amboy Rd. Staten Island, NY 10307
Patient Home Address – Required (Current No., Street, Town, State, ZIP – no PO boxes)  ☐ Check If New

(e) Mailing Address, if different from Home Address _____

(f) Patient Employer Name/City/State  Ernst & Young U.S. LLP

(g) Patient Telephone Number 718-608-1998                                    ☐ Check

(h) Job Title/Occupation  Ret Ben Sr Assoc

(i) Type of Claim:  ☐ Short Term Disability   ☐ Long Term Disability   ☐ Waiver of Premium
☐ Long Term / Permanent Total Disability

**2. Physician Instructions**

The *Attending Physician* should complete the items below, based upon a recent examination.  Attach additional documentation as needed.  If you have any questions, please call 1-866-326-1380.
**Please complete form in its entirety and fax to** 1-866-667-1987          **Pages 2 and 3 MUST be completed before fa**

**3. Impairing Diagnosis & Treatment**

(a) For medical reasons, the patient will need to be absent from work due to a disability beginning
on _____ and ending on _____  this disabled
(MM/DD/YYYY)        (MM/DD/YYYY)

(b) Primary Diagnosis  Multiple Sclerosis        Primary ICD Code _____
Secondary Diagnosis _____        Secondary ICD Code _____
Other Diagnoses _____        Other ICD Codes _____

(c) Height _____  Weight _____  Date Measured (MM/DD/YYYY) _____

(d) If Pregnancy related, delivery or expected due date  N/A  Month _____ Day _____ Year _____
Delivery Type:  ☐ Vaginal  ☐ Cesarean

(e) Surgery Date _____  Month _____ Day _____ Year _____
Primary Procedure _____        Primary CPT Code _____
Secondary Procedure _____        Secondary CPT Code _____
Other Procedures _____        Other CPT Codes _____

(f) Medication(s)/Dose/Frequency  Copaxone Q.D. im  Serogual, 25 d.y.
Xanax, Lamictal
Impairment from medication effects _____

(g) Is patient still under your care for this condition?  ☑ Yes  ☐ No  Date service terminated _____
(MM/DD/YYYY)

(h) Treatment Summary  Office Visits

(i) Office Visit Dates: First 5/21/10  Last 7/21/10  Next _____  Frequency of appointments 3 mos.
(MM/DD/YYYY)      (MM/DD/YYYY)    (MM/DD/YYYY)

(j) Was patient recently hospitalized?  ☑ No  ☐ Yes  Date hospitalized: Admit _____ Discharge _____
(MM/DD/YYYY)      (MM/DD/

(k) Hospital Name/City/State _____

10/3/10

Claim Number: 2015099

~~Patient Name (Last, First, Middle Initial)~~ Required

TROIANO, DEBRA  *A.*

## 4. History

(a) Symptoms: _Pt suffers from severe Cog ntu.l illnes_

(b) Date symptoms first appeared or accident happened    Month _____ Day _____ Year _____

(c) Has patient ever had same or similar condition? ☑No   ☐ Yes  State when and describe.

(e) Is condition due to injury or sickness arising out of patient's employment?  ☑No   ☐ Yes   ☐ Unknown

(f) Other Treating Physicians

Name _____ Specialty _____ City _____ State __

Name _____ Specialty _____ City _____ State __

## 5. Abilities/Limitations

(a) **Patient is:** Place remarks in item (d) below, if applicable.

- Competent to endorse checks and direct the use of proceeds thereof ....  ☑Yes  ☐No  ☐ Other/describe
- Able to work with others ...........................................................................  ☐ Yes  ☑No  ☐ Other/describe
- Able to give supervision ...........................................................................  ☐ Yes✓  ☑No  ☐ Other/describe
- Able to work cooperatively with others in group setting ............................  ☐ Yes  ☑No  ☐ Other/describe
- **Able to do?** Select one: Place remarks in item (d) below, if applicable.
  - ☐ **Heavy work** activity.  No limitations of functional capacity.
  - ☐ **Medium work** activity.  Exerting 20-50 pounds of force occasionally, and/or 10-25 pounds of force freque and/or greater than negligible up to 10 pounds of force constantly.
  - ☐ **Light work** activity.  Exerting up to 20 pounds of force occasionally and/or up to 10 pounds of force frequ
  - ☐ **Sedentary work** activity.  Moderate limitation of functional capacity.  Exerting up to 10 pounds of force occasionally.  (Sedentary work involves sitting most of the time, but may involve walking or standing for b periods of time.)
  - ☑ **No ability to work.**  Severe limitation of functional capacity; incapable of minimal activity.
  - ☐ **Other.**  Place remarks in item (d) below.

(b) **What medical restrictions/limitations are you placing on patient?** *(Activities of Daily Living, Driving, Lifting, Pulling, Pushing, and Amounts, etc.)* _Pt is totally disabled (walkis_ _driving_

- Number of Hours patient is capable of working in a day ☑ ☐ 12  ☐ 10  ☐ 8  ☐ 6  ☐ 4  ☐ 2  ☐ 1  Hour/
- Number of Days per week patient is able to work:  ☑  ☐ 1  ☐ 2  ☐ 3  ☐ 4  ☐ 5  ☐ 6  ☐ 7  Days/
- Date you prescribed restriction on work activities:    Month _____ Day _____ Year _____
- How long are these restrictions/limitations in effect?  _____ _____ _____  ☐ No Longer
                                                                                     Days      Weeks     Months
- Estimated return to work date?  ☑ _____ Modified Duty _____ Full Duty
                                  (MM/DD/YYYY)                  (MM/DD/YYYY)

(c) **Objective findings that substantiate impairment** *(current laboratory, physical and/or mental status examination a other testing)*

(d) Other/Comments _____

## 6. Current Status

(a) Patient has    ☐ Improved    ☐ Stabilized    ☐ Regressed    ☐ Not Applicable

(b) Is there a medical contraindication for patient to participate in Vocational Rehabilitation (job training) programs?
☐ No   ☐ Yes, please explain _____

(c) In your opinion, is your patient motivated to return to work? _____

## 7. Physician Information

Attending Physician's Name (Print) _Dr Allan Perl_    Degree _MA_    Specialty _Neurology_

Address (No. Street, City, State, ZIP Code) _24 King Dove lane_    Telephone Number _718 667 3800_    Fax Number _718 667 850_

~~Signature~~    Date (MM/DD/YYYY) _10/3/16_

Claim Number: 2015099

Aetna Life Insurance C
PO Box 14560
Lexington, KY 40512-4
Telephone: 1-866-326-1
Fax: 1-866-667-1987

# aetna  **Capabilities and Limitations Worksheet**

Complete and sign the form using BLUE or BLACK ink.

| Employee Name *(Last, First, Middle Initial)* | Social Security Number | Year of Birth |
|---|---|---|
| TROIANO, DEBRA A. | | 1960 |

| Gender | Job Title | Control Number |
|---|---|---|
| ☐ Male  ☑ Female | Ret Ben Sr. Assoc. | 0818967 |

| Current Diagnosis | Medications: |
|---|---|
| | |

Indicate the percent of the day the following activities can be performed:

(**O**ccasional 1-33% or .5-2.5 hrs. **F**requent 34-66% or 2.6-5.0 hrs. **C**ontinuous 67-100% or 5.1-8 hrs. or **N**ever)

| | O | F | C | N |   | | O | F | C | N |
|---|---|---|---|---|---|---|---|---|---|---|
| Climbing - only stairs | ☐ | ☑ | ☐ | ☐ | Hand Grasping __R__L | ☑ | ☐ | ☐ | ☐ |
| Crawling | ☐ | ☐ | ☐ | ☑ | Firm Hand Grasping __R__L | | | | ☒ |
| Kneeling | ☐ | ☐ | ☐ | ☒ | Fine Manipulation __R__L | ☒ | ☐ | ☐ | |
| Lifting only upto 10 lbs | ☐ | ☒ | ☐ | ☐ | Gross Manipulation __R__L | ☒ | ☐ | ☐ | |
| Pulling upto 10 lbs | ☐ | ☒ | ☐ | ☐ | Repetitive Motion __R__L | ☒ | ☐ | ☐ | |
| Pushing upto 10 lbs | ☐ | ☒ | ☐ | ☐ | Sitting __R__L | ☒ | ☐ | ☐ | |
| Reaching above shoulder | ☒ | ☐ | ☐ | ☐ | Standing __R__L | ☒ | ☐ | ☐ | |
| Forward reaching | ☐ | ☒ | ☐ | ☐ | Stooping __R__L (p) | ☒ | ☐ | ☐ | |
| Carrying | ☒ | ☐ | ☐ | ☐ | Walking __R__L | ☒ | ☐ | ☐ | ☒ |
| Bending | ☐ | ☐ | ☐ | ☒ | Other _____ | | | | |
| Twisting | ☐ | ☐ | ☐ | ☒ | | | | | |

**Maximum weight patient is capable of lifting:**

| | O | F | C | N |
|---|---|---|---|---|
| 1 - 5 lbs. | ☐ | ☒ | ☐ | ☐ |
| 6 - 10 lbs. | ☐ | ☒ | ☐ | ☐ |
| 11 - 20 lbs. | ☐ | ☐ | ☐ | ☒ |
| 21 - 35 lbs. | ☐ | ☐ | ☐ | ☒ |
| 36 - 50 lbs. | ☐ | ☐ | ☐ | ☒ |
| 51 - 75 lbs. | ☐ | ☐ | ☐ | ☒ |
| 75 - 100 lbs. | ☐ | ☐ | ☐ | ☒ |
| 100 lbs. + | ☐ | ☐ | ☐ | ☒ |

**Approved Head and Neck Movements:**

| | Yes | No |
|---|---|---|
| Static Position | ☐ | ☒ |
| Frequent Flexing | ☐ | ☒ |
| Frequent Rotation | ☐ | ☒ |

**Can the Patient operate:**

| | Yes | No |
|---|---|---|
| A Motor Vehicle | ☐ | ☒ |
| Hazardous Machine | ☐ | ☒ |
| Power Tools | ☐ | ☒ |

**Limitations to:**
Speaking _____ hrs.
Vision (explain) _____
Depth Perception _____
Hearing (explain) _____

**Exposure Limitations: Yes / No**

| | Yes | No | | | Yes | No |
|---|---|---|---|---|---|---|
| Heat | ☐ | ☐ | | Dust | ☒ | |
| Cold | ☒ | ☐ | | Fumes | ☒ | |
| Dampness | ☒ | ☐ | | Chemicals | ☒ | |
| Noise | ☐ | ☒ | | Radiation | ☒ | |

Total # of hours patient capable of working per day: 12 ☐   8 ☐   6 ☐   4 ☐   2 ☐

Duration of restrictions: _____   Care Complete: Yes ☐   No ☐   Next Appointment _____

Additional Comments: _Pt suffers from RK Mal type PT's condition + severe cognitive 15% gry Pt's condition is chronic d/o for which there is no cure for._

| Physician's Signature | Date *(MM/DD/YYYY)* |
|---|---|
| | 10/3/12 |

| Physician Name | Specialty |
|---|---|
| Dr. Allan Perel MD | Neurology |

| Phone Number | Fax Number |
|---|---|
| 718-667-3800 | 718-667-8557 |

| Address |
|---|
| 24 New Dorp Lane St NY 10306 |

12/2011 4:11 PM                    AETNA -> 17186673590                    Page 4 of 7

**✗ Aetna**          **Attending Physician Statement –**          Aetna Life Insurance Company
                      **Neurology**                                P.O. Box 14560
                                                                   Lexington, KY 40512-4560
                                                                   ACS Fax#:   866-667-1987

## 1.  Patient Information

| Name _Debra Troiana_ | Birth Date *(MM/DD/YYYY)* | Control Number |

## 2.  Physician Information

| Name _Dr Allan Perel MD_ | Specialty _Neurology_ |

| Tax I.D. Number | Telephone Number *(include area code)* _718 667-3810_ | Fax Number *(include area code)* _718 667-3697_ |

## 3.  Management Information

| Claimant Manager | Case Number |

| First Day Out of Work | Telephone Number *(include area code)* | Fax Number *(include area code)* |

## 4.  Treatment Information

| Initial Treatment Date _6/21/07_ | Last Appointment Date _6/15/11_ | Treatment Frequency _2 Mth to 3 Mth_ |

Medication (Name, Dosage and Frequency)
_Copaxone inj. Serogual Zoloft, Xanax Lamictal_

| Hospitalized  ☐ Yes  ☐ No | Recent Hospitalization  Admitted on _2/28/11 O_  /  Discharged on _3/1_ | Recent Surgery Date *(MM/DD/YYYY)* |

## 5.  Clinical Condition

| Diagnosis _relapsing remitting Multiple Sclerosis_ | ICD9 Code |

Is this condition responsible for any functional impairment?   ☑ Yes, complete **Sections 6, 7, 8 and 9**
                                                                ☐ No, provide a release to full duty in **Section 9**

## 6.  Treatment Plan

_Medication   follow up office visits   Physical
Vestibular Thule_

## 7.  Objective Data that documents a functional impairment

Physical Exam (Gait, Motor/Sensory, DTR's, Ataxia, Nystagmus, Mental Status Exam) or WNL

Diagnostic Tests (EEG, EMG, NCV, LP/CSF Analysis, CT, MRI, Myleogram, Drug Levels/Screens, CBC, B12, TSH, Profiles, Biopsies) or WNL

Other or WNL

## 8.  Work Restrictions

_Pt cannot work._

## 9.  Return To Work Status

☐ Able to return to full duty on (date): ___/___/___
☐ Able to work with restrictions.
    Can return to work on (date): ___/___/___    Work restrictions will apply until (date): ___/___/___
☑ I am unable to release this patient.
    I anticipate significant clinical improvement by date: ___/___/___    Next appointment (date): _9/19/11_

## 10.  Signature

| Physician's Signature | Date *(MM/DD/YYYY)* _7/11/11_ |

**WKAB**
^-68330 (4-07)

Aetna Life Insurance Company
PO Box 14560
Lexington, KY 40512-4560
Telephone:  866-326-1380
Fax:        866-667-1987

# Aetna® **Capabilities and Limitations Worksheet**

Complete and sign the form using BLUE or BLACK ink.

| Employee Name (Last, First, Middle Initial) | Social Security Number | Year of Birth |
|---|---|---|

| Gender ☐ Male ☒ Female | Job Title | Control Number |
|---|---|---|

| Current Diagnosis | Medications: |
|---|---|

Indicate the percent of the day the following activities can be performed:

(**O**ccasional 1-33% or .5-2.5 hrs. **F**requent 34-66% or 2.6-5.0 hrs. **C**ontinuous 67-100% or 5.1-8 hrs. or **N**ever)

Climbing - only stairs
Crawling
Kneeling
Lifting 5-10lbs
Pulling 5-10 lbs
Pushing 5-10 lbs
Reaching above shoulder
Forward reaching
Carrying 5-10 lbs
Bending
Twisting

Hand Grasping __R__L
Firm Hand Grasping __R__L
Fine Manipulation __R__L
Gross Manipulation __R__L
Repetitive Motion __R__L
Sitting __R__L
Standing __R__L
Stooping __R__L
Walking __R__L
Other _____

Maximum weight patient is capable of lifting:
1 - 5 lbs.
6 - 10 lbs.
11 - 20 lbs.
21 - 35 lbs.
36 - 50 lbs.
51 - 75 lbs.
75 - 100 lbs.
100 lbs. +

Approved Head and Neck Movements: Yes No
Static Position
Frequent Flexing
Frequent Rotation

Can the Patient operate: Yes No
A Motor Vehicle
Hazardous Machine
Power Tools

Limitations to:
Speaking ____ hrs.
Vision (explain) ____
Depth Perception ____
Hearing (explain) ____

Exposure Limitations: Yes No      Yes No
Heat          Dust
Cold          Fumes
Dampness      Chemicals
Noise         Radiation

Total # of hours patient capable of working per day: 12☐ 8☐ 6☐ 4☐ 2☐
Duration of restrictions: ____
Additional Comments: ____

Care Complete: Yes☐ No☒  Next Appointment: ____

Physician's Signature ____      Date (MM/DD/YYYY) 2/17/11

Page 2

| Name | Birth Date *(MM/DD/YYYY)* |
|---|---|
| | /     / |

## 11. Misrepresentation

Any person who knowingly and with intent to injure, defraud or deceive any insurance company or other person files an application for insurance or statement of claim containing any materially false information or conceals, for the purpose of misleading, information concerning any fact material thereto commits a fraudulent insurance act, which is a crime and subjects such person to criminal and civil penalties.

**Attention Arkansas, Louisiana and West Virginia Residents:** Any person who knowingly presents a false or fraudulent claim for payment of a loss or benefit or knowingly presents false information in an application for insurance is guilty of a crime and may be subject to fines and confinement in prison.

**Attention California, Ohio and Pennsylvania Residents:** Any person who knowingly and with intent to defraud any insurance company or other person files an application for insurance or statement of claim containing any materially false information or conceals, for the purpose of misleading, information concerning any fact material thereto commits a fraudulent insurance act, which is a crime and subjects such person to criminal and civil penalties.

**Attention Colorado Residents:** It is unlawful to knowingly provide false, incomplete, or misleading facts or information to an insurance company for the purpose of defrauding or attempting to defraud the company. Penalties may include imprisonment, fines, denial of insurance and civil damages. Any insurance company or agent of an insurance company who knowingly provides false, incomplete, or misleading facts or information to a policyholder or claimant for the purpose of defrauding or attempting to defraud the policyholder or claimant with regard to a settlement or award payable from insurance proceeds shall be reported to the Colorado division of insurance within the department of regulatory agencies.

**Attention Florida Residents:** Any person who knowingly and with intent to injure, defraud, or deceive any insurer, files a statement of claim or an application containing any false, incomplete or misleading information is guilty of a felony of the third degree.

Attention Kansas Residents: Any person who knowingly and with intent to injure, defraud or deceive any insurance company or other person submits an enrollment form for insurance or statement of claim containing any materially false information or conceals, for the purpose of misleading, information concerning any fact material thereto may have violated state law.

**Attention Kentucky Residents:** Any person who knowingly and with intent to defraud any insurance company or other person files an application for insurance or statement of claim containing any materially false information or conceals, for the purpose of misleading, information concerning any fact material thereto commits a fraudulent insurance act, which is a crime and may subject such person to criminal and civil penalties.

**Attention Maine and Tennessee Residents:** It is a crime to knowingly provide false, incomplete, or misleading information to an insurance company for the purpose of defrauding the company. Penalties may include imprisonment, fines or denial of insurance benefits.

**Attention New Jersey Residents:** Any person who includes any false or misleading information on an application for an insurance policy or knowingly files a statement of claim containing any false or misleading information is subject to criminal and civil penalties.

**Attention New York Residents:** Any person who knowingly and with intent to defraud any insurance company or other person files an application for insurance or statement of claim containing any materially false information, or conceals for the purpose of misleading, information concerning any fact material thereto, commits a fraudulent insurance act, which is a crime, and shall be subject to a civil penalty not to exceed five thousand dollars and the stated value of the claim for each violation.

**Attention North Carolina Residents:** Any person who knowingly and with intent to injure, defraud or deceive any insurance company or other person files an application for insurance or statement of claim containing any materially false information or conceals, for the purpose of misleading, information concerning any fact material thereto commits a fraudulent insurance act, which may be a crime and subjects such person to criminal and civil penalties.

**Attention Oklahoma Residents:** WARNING: Any person who knowingly, and with intent to injure, defraud or deceive any insurer, makes any claim for the proceeds of an insurance policy containing any false, incomplete or misleading information is guilty of a felony.

**Attention Oregon Residents:** Any person who with intent to injure, defraud or deceive any insurance company or other person submits an enrollment form for insurance or statement of claim containing any materially false information or conceals for the purpose of misleading, information concerning any fact material thereto may have violated state law.

**Attention Puerto Rico Residents:** Any person who knowingly and with the intention to defraud includes false information in an application for insurance or file, assist or abet in the filing of a fraudulent claim to obtain payment of a loss or other benefit, or files more than one claim for the same loss or damage, commits a felony and if found guilty shall be punished for each violation with a fine of no less than five thousand dollars ($5,000), not to exceed ten thousand dollars ($10,000); or imprisoned for a fixed term of three (3) years, or both. If aggravating circumstances exist, the fixed jail term may be increased to a maximum of five (5) years; and if mitigating circumstances are present, the jail term may be reduced to a minimum of two (2) years.

**Attention Vermont Residents:** Any person who knowingly and with intent to injure, defraud or deceive any insurance company or other person files an application for insurance or statement of claim containing any materially false information or conceals, for the purpose of misleading, information concerning any fact material thereto commits a fraudulent insurance act, which may be a crime and may subject such person to criminal and civil penalties.

**Attention Virginia Residents:** Any person who knowingly and with intent to injure, defraud or deceive any insurance company or other person files an application for insurance or statement of claim containing any materially false information or conceals, for the purpose of misleading, information concerning any fact material thereto commits a fraudulent act, which is a crime and subjects such person to criminal and civil penalties.

**Attention Washington Residents:** It is a crime to knowingly provide false, incomplete, or misleading information to an insurance company for the purpose of defrauding the company. Penalties include imprisonment, fines, and denial of insurance benefits.

WKAB
GR-68330 (4-07)

Claim Number: 2015099

# aetna

## Attending Physician Statement
Complete and sign the form using BLUE or BLACK Ink.

Aetna Life Insurance Company
PO Box 14560
Lexington, KY 40512-4560
Phone: 1-866-326-1380
Fax: 1-866-667-1987

The Genetic Information Nondiscrimination Act of 2008 (GINA) prohibits employers and other entities covered by GINA Title II from requesting or requiring genetic information of an individual or family member of the individual, except as specifically allowed by this law. To comply with this law, we are asking that you not provide any genetic information when responding to this request for medical information. 'Genetic information' as defined by GINA, includes an individual's family medical history, the results of an individual's or family member's genetic tests, the fact that an individual or an individual's family member sought or received genetic services, and genetic information of a fetus carried by an individual or an individual's family member or an embryo lawfully held by an individual or family member receiving assistive reproductive services. *Please note that it is appropriate under GINA to provide family medical history when an employee is requesting leave to care for a family member.*

**1. Patient Instructions** — The Physician will complete Sections 2 through 7.
The Patient will complete Sections 1 and 8.
The Patient should also fill in their name at the top of Pages 2 and 3.

*Claim # 2015099*

The *Patient* is responsible for completing this section and for ensuring that their **Attending Physician** completes the remainder of this statement. The Patient is responsible for paying any fees that may be charged for completion of this form by their physician. **If you have any questions, please call 1-866-326-1380.**

(a) Control Number ___0818967___
(b) ___TROIANO, DEBRA  A.___ _____ ___ ___ ___ ___ ___ ___ __5'3½"__ __142__
     Patient Name (Last, First, Middle Initial)      Social Security Number      Year of Birth      Height   Weight (lbs.)
(c) Patient Gender  ☐ Male   ☑ Female
(d) ___7760 Amboy Ra, Apt 10.307___
     Patient Home Address – Required (Current No., Street, Town, State, ZIP – no PO boxes)  ☐ Check if New
(e) Mailing Address, if different from Home Address _____
(f) Patient Employer Name/City/State ___Ernst & Young U.S. LLP___
(g) Patient Telephone Number ___48-608-1998___ _____ ☐ Check if New
(h) Job Title/Occupation ___Ret Ben Sr Assoc___
(i) Type of Claim:  ☐ Short Term Disability   ☐ Long Term Disability   ☐ Waiver of Premium
     ☑ Long Term / Permanent Total Disability

## 2. Physician Instructions

The *Attending Physician* should **complete the items below**, based upon a recent examination. Attach additional documentation as needed. If you have any questions, please call **1-866-326-1380**.

**Please complete form in its entirety and fax to 1-866-667-1987.      Pages 2 and 3 MUST be completed before faxing.**

## 3. Impairing Diagnosis & Treatment

(a) For medical reasons, the patient will need to be absent from work due to a disability beginning
    on _____ and ending on ___Pt's disabled___
         (MM/DD/YYYY)                    (MM/DD/YYYY)
(b) Primary Diagnosis ___Multiple Sclerosis___     Primary ICD Code _____
    Secondary Diagnosis _____     Secondary ICD Code _____
    Other Diagnoses _____     Other ICD Codes _____
(c) Height _____ Weight _____ Date Measured (MM/DD/YYYY) _____
(d) If Pregnancy related, delivery or expected due date _____ Month _____ Day _____ Year _____
    Delivery Type: ☐ Vaginal ☐ Cesarean
(e) Surgery Date ................................ Month _____ Day _____ Year _____
    Primary Procedure _____     Primary CPT Code _____
    Secondary Procedure _____     Secondary CPT Code _____
    Other Procedures _____     Other CPT Codes _____
(f) Medication(s)/Dose/Frequency ___Tecfidera, prilosec 40, zoloft,___
    ___Lamicta 100___
    Impairment from medication effects ___none___
(g) Is patient still under your care for this condition? ☑ Yes ☐ No Date service terminated _____
                                                                      (MM/DD/YYYY)
(h) Treatment Summary ___Follow visits  medication___
(i) Office Visit Dates: First ___11/5/21___ Last ___2  11/14/14___ Next ___2/12/18___ Frequency of appointments ___3 mos___
                         (MM/DD/YYYY)      (MM/DD/YYYY)      (MM/DD/YYYY)
(j) Was patient recently hospitalized? ☑ No ☐ Yes Date hospitalized: Admit _____ Discharge _____
                                                                        (MM/DD/YYYY)        (MM/DD/YYYY)
(k) Hospital Name/City/State _____

**WKAB-** GC-1486-26 (7-13) C R-POD



*11/19/14*

Claim Number: 2015099

*Claim # 20/5099*

Page 2

Patient Name *(Last, First, Middle Initial)* Required
TROIANO, DEBRA A.

## 4. History

(a) Symptoms: fatigue; weakness UB's + LB's severe cognitive issues.

(b) Date symptoms first appeared or accident happened   Month _5_  Day _____  Year _2007_

(c) Has patient ever had same or similar condition? ☑ No  ☐ Yes  State when and describe.

(e) Is condition due to injury or sickness arising out of patient's employment? ☑ No  ☐ Yes  ☐ Unknown

(f) Other Treating Physicians

Name _____ Specialty _____ City _____ State ____

Name _____ Specialty _____ City _____ State ____

## 5. Abilities/Limitations

(a) Patient is:  Place remarks in item (d) below, if applicable.

- Competent to endorse checks and direct the use of proceeds thereof .... ☑ Yes  ☐ No  ☐ Other/describe in (d)
- Able to work with others ............................................................ ☐ Yes  ☑ No  ☐ Other/describe in (d)
- Able to give supervision ............................................................ ☐ Yes  ☑ No  ☐ Other/describe in (d)
- Able to work cooperatively with others in group setting .................. ☐ Yes  ☑ No  ☐ Other/describe in (d)
- Able to do?  Select one:  Place remarks in item (d) below, if applicable.
  - ☐ Heavy work activity.  No limitations of functional capacity.
  - ☐ Medium work activity.  Exerting 20-50 pounds of force occasionally, and/or 10-25 pounds of force frequently, and/or greater than negligible up to 10 pounds of force constantly.
  - ☐ Light work activity.  Exerting up to 20 pounds of force occasionally and/or up to 10 pounds of force frequently.
  - ☐ Sedentary work activity.  Moderate limitation of functional capacity.  Exerting up to 10 pounds of force occasionally.  (Sedentary involves sitting most of the time, but may involve walking or standing for brief periods of time.)
  - ☑ No ability to work.  Severe limitation of functional capacity; incapable of minimal activity.
  - ☐ Other.  Place remarks in item (d) below.

(b) What medical restrictions/limitations are you placing on patient? *(Activities of Daily Living, Driving, Lifting, Pulling, Pushing, and Amounts, etc.)* Pt. is totally disabled w/ ADL's home. Condition is chronic.

- Number of Hours patient is capable of working in a day: ☑ 0  ☐ 12  ☐ 10  ☐ 8  ☐ 6  ☐ 4  ☐ 2  ☐ 1  Hour/Day
- Number of Days per week patient is able to work:  ☑ 0  ☐ 1  ☐ 2  ☐ 3  ☐ 4  ☐ 5  ☐ 6  ☐ 7  Days/Week
- Date you prescribed restriction on work activities:   Month _____  Day _____  Year __-__
- How long are these restrictions/limitations in effect?  _____ Days  _____ Weeks  _____ Months  ☐ No Longer
- Estimated return to work date? _0_ _____ Modified Duty  _____ Full Duty
                                    (MM/DD/YYYY)                    (MM/DD/YYYY)

(c) Objective findings that substantiate impairment *(current laboratory, physical and/or mental status examination and other testing)*

(d) Other/Comments _____

## 6. Current Status

(a) Patient has   ☐ Improved   ☐ Stabilized   ☐ Regressed   ☐ Not Applicable

(b) Is there a medical contraindication for patient to participate in Vocational Rehabilitation (job training) programs?
☐ No  ☐ Yes, please explain _____

(c) In your opinion, is your patient motivated to return to work? _____

## 7. Physician Information

Attending Physician's Name *(Print)* _____ MD   Degree M.   Specialty Neurology

Address *(No. Street, City, State, ZIP Code)* 24 Madison Ave   Telephone Number 718 667-3805   Fax Number 718 667-3506

Signature _____   Date (MM/DD/YYYY) 11/19/14

WKAB
GC-1486-26 (7-13) C

# aetna®  Attending Provider Statement

Aetna Life Insurance Company
PO Box 14560
Lexington, KY 40512-4560

One of your patients has filed a disability claim with us. *Fax: 866-667-1987*
You can help us make a decision quickly.

*COPY*

**Step 1:** Fill out the form. Answer each question as thoroughly as you can. Type or write clearly, please.
**Step 2:** Send it back to us. You can fax it to us at ___*866-667-1987*___. If you have office notes, test results, or other information that relates to the condition, you can send that too.
**Step 3:** Work with us if we need more information. If we need to clarify anything, we'll let you know.

## Section 1 – Patient Information (to be completed by your patient)

Member Name (Last, First, Middle Initial)
*Troiano, Debra A.*

Employee ID/Claim Number
*2015099*

Employer
*Ernst + Young LLP*

Date of Birth

## Section 2 – Medical Information (to be completed by the provider)

| | |
|---|---|
| 1. Primary Dx/ICD Code and Date of Diagnosis *Multiple Sclerosis* | 2. Additional Dx/ICD Code(s) and Dates(s) of Diagnosis |
| 3. Procedure/CPT Codes and Dates | 4. When did you first treat the patient for this condition? *3/17/11* |

| | | |
|---|---|---|
| 5. Are you still treating the patient for this condition? ☒Yes ☐ No | 6. What was the last date you saw the patient? *10/27/16* | 7. Date of Next Office Visit *1/27/16* |

8. On what date do you believe the impairment limited work capacity?
Date: _____  ☒Unknown

9. Was patient recently hospitalized? *NO*
☐ Yes ☒ No   Admit _____   Discharge _____
Hospital Name/City/State _____

10. Is the condition due to an injury or illness arising out of the patient's employment?
☐ Yes ☒ No ☐ Unknown

11. What specific physical, cognitive or behavioral activity/function is the patient unable to do?
*Pt's condition is chronic + he suffers from fatigue, muscle weakness, Pt has difficulty standing for a period of time, loss of balance.*

12. What specific physical, cognitive or behavioral activity/function you are managing, can the patient still do?
*Pt is unable to sit for a long period of time. Pt cannot lift over 10-15 lbs, push, pull or carry over 10-15 lb.*

13. Describe the patient's treatment plan; including any medications
*Tysabri, Zoloft, Vit D.*

| | |
|---|---|
| 14. If the patient is likely to have a full recovery, what date/timeframe would that be? | 15. What date/timeframe would you expect to see some improvement in the patient's ability to function? *Unable to determine.* |

**Thank you for your help.**
If we need to follow up for clarification or more information, what's the best way to contact you (phone/fax and time of day)?
*Donna Ferraro @ X108*

## Section 3 – Provider's Signature

Provider's Name (Print)
*Dr Allen Perl*

Degree
*MD*

Specialty
*Neurology*

Address (No. Street, City, State, ZIP Code)
*24 New Dorp Lane SI NY 10306*

Telephone Number
*718 667 3800*

Fax Number
*718 667 3800*

Signature

Date (MM/DD/YYYY)
*12/5/16*

/KAB
G-1486-26 (5-15) F

From: Brandon Mahaffy DC   Fax: 17043264533          Fax: (718) 667-3500          Page: 2 of 5     01/14/2019 10:41 AM

Claim Number: 2015099

## aetna®  Attending Physician Statement
Complete and sign the form using BLUE or BLACK ink.

Aetna Life Insurance Company
PO Box 14560
Lexington, KY 40512-4560

The Genetic Information Nondiscrimination Act of 2008 (GINA) prohibits employers and other entities covered by GINA Title II from requesting or requiring genetic information of an individual or family member of the individual, except as specifically allowed by this law. To comply with this law, we are asking that you not provide any genetic information when responding to this request for medical information. 'Genetic information' as defined by GINA, includes an individual's family medical history, the results of an individual's or family member's genetic tests, the fact that an individual or an individual's family member sought or received genetic services, and genetic information of a fetus carried by an individual or an individual's family member or an embryo lawfully held by, an individual or family member receiving assistive reproductive services. *Please note that it is appropriate under GINA to provide family medical history when an employee is requesting leave to care for a family member.*

1. **Patient Instructions** — The Physician will complete Sections 2 through 7.
The Patient will complete Sections 1 and 8.
The Patient should also fill in their name at the top of Pages 2 and 3.

The *Patient* is responsible for completing this section and for ensuring that their Attending Physician completes the remainder of this statement.  The Patient is responsible for paying any fees that may be charged for completion of this form by their physician. **If you have any questions, please call 1-866-326-1380**

(a) Control Number _____ 2015099
(b) TROIANO DEBRA A.  _____ Height 5'2" Weight 143
     Patient Name (Last, First, Middle Initial)    Social Security Number    Year of Birth
(c) Patient Gender ☐ Male   ☑ Female
(d) 34 GRISTMILL RD Monroe, CT 06468
     Patient Home Address – Required (Current No., Street, Town, State, ZIP – no PO boxes)   ☐ Check if New
(e) Mailing Address, if different from Home Address _____
(f) Patient Employer Name/City/State _____
(g) Patient Telephone Number 347-423-0249                          ☐ Check if New
(h) Job Title/Occupation _____
(i) Type of Claim:  ☐ Short Term Disability  ☑ Long Term Disability  ☐ Waiver of Premium
     ☐ Long Term / Permanent Total Disability

## 2. Physician Instructions
The *Attending Physician* should complete the items below, based upon a recent examination. Attach additional documentation as needed. If you have any questions, please call **1-866-326-1380**
Please complete form in its entirety and fax to **18666671987** Pages 2 and 3 MUST be completed before faxing.

## 3. Impairing Diagnosis & Treatment
(a) For medical reasons, the patient will need to be/absent from work due to a disability beginning
     on _____ and ending on _____ Pt. is disabled.
     (MM/DD/YYYY)              (MM/DD/YYYY)
(b) Primary Diagnosis Multiple Sclerosis       Primary ICD Code _____
     Secondary Diagnosis _____          Secondary ICD Code _____
     Other Diagnoses _____              Other ICD Codes _____
(c) Height _____ Weight _____ Date Measured (MM/DD/YYYY) _____
(d) If Pregnancy related, delivery or expected due date   Month _____ Day _____ Year _____
     Delivery Type:  ☐ Vaginal  ☐ Cesarean
(e) Surgery Date ........................ Month _____ Day _____ Year _____
     Primary Procedure _____ N/A        Primary CPT Code _____
     Secondary Procedure _____     Secondary CPT Code _____
     Other Procedures _____        Other CPT Codes _____
(f) Medication(s)/Dose/Frequency Tecfidera _____

     Impairment from medication effects _____
(g) Is patient still under your care for this condition? ☑ Yes ☐ No  Date service terminated _____ (MM/DD/YYYY)
(h) Treatment Summary The office visits MRI testing continue Medicat-
(i) Office Visit Dates: First 5/21/18 Last _____ Next _____ Frequency of appointments _____
                        (MM/DD/YYYY)  (MM/DD/YYYY)   (MM/DD/YYYY)
(j) Was patient recently hospitalized? ☐ No ☑ Yes  Date hospitalized: Admit _____ Discharge _____
                                                                 (MM/DD/YYYY)        (MM/DD/YYYY)
(k) Hospital Name/City/State _____

WKAB
GC-1486-17 (6-16) PTD



1/14/19

Claim Number: 2015099

Page 2

Patient Name (Last, First, Middle Initial) Required
Troiano Debra A

## 4. History

(a) Symptoms: Weakness of UE + LE Fatigue - Cognitive issues.

(b) Date symptoms first appeared or accident happened   Month ___ Day ___ Year ___
(c) Has patient ever had same or similar condition? ☐ No  ☐ Yes  State when and describe.

(e) Is condition due to injury or sickness arising out of patient's employment? ☐ No  ☐ Yes  ☐ Unknown
(f) Other Treating Physicians
Name _____ Specialty _____ City _____ State _____
Name _____ Specialty _____ City _____ State _____

## 5. Abilities/Limitations

(a) Patient is:  Place remarks in item (d) below, if applicable.
- Competent to endorse checks and direct the use of proceeds thereof .... ☐ Yes ☐ No ☐ Other/describe in (d)
- Able to work with others ................................................ ☐ Yes ☐ No ☐ Other/describe in (d)
- Able to give supervision ............................................... ☐ Yes ☐ No ☐ Other/describe in (d)
- Able to work cooperatively with others in group setting ............. ☐ Yes ☐ No ☐ Other/describe in (d)
- Able to do?  Select one;  Place remarks in item (d) below, if applicable.
  - ☐ Heavy work activity.  No limitations of functional capacity.
  - ☐ Medium work activity.  Exerting 20-50 pounds of force occasionally, and/or 10-25 pounds of force frequently, and/or greater than negligible up to 10 pounds of force constantly.
  - ☐ Light work activity.  Exerting up to 20 pounds of force occasionally and/or up to 10 pounds of force frequently.
  - ☐ Sedentary work activity.  Moderate limitation of functional capacity.  Exerting up to 10 pounds of force occasionally.  (Sedentary work involves sitting most of the time, but may involve walking or standing for brief periods of time.)
  - ☒ No ability to work.  Severe limitation of functional capacity; incapable of minimal activity.
  - ☐ Other.  Place remarks in item (d) below.
(b) What medical restrictions/limitations are you placing on patient? *(Activities of Daily Living, Driving, Lifting, Pulling, Pushing, and Amounts, etc.)* _____

- Number of Hours patient is capable of working in a day: ☒ 12 ☐ 10 ☐ 8 ☐ 6 ☐ 4 ☐ 2 ☐ 1 Hour/Day
- Number of Days per week patient is able to work: ☒ 1 ☐ 2 ☐ 3 ☐ 4 ☐ 5 ☐ 6 ☐ 7 Days/Week
- Date you prescribed restriction on work activities: Month ___ Day ___ Year ___
- How long are these restrictions/limitations in effect? ___ Days ___ Weeks ___ Months ☐ No Longer
- Estimated return to work date? ___ (MM/DD/YYYY) ___ Modified Duty ___ (MM/DD/YYYY) ___ Full Duty
(c) Objective findings that substantiate impairment *(current laboratory, physical and/or mental status examination and other testing)*

(d) Other/Comments _____

## 6. Current Status

(a) Patient has  ☐ Improved  ☐ Stabilized  ☐ Regressed  ☐ Not Applicable
(b) Is there a medical contraindication for patient to participate in Vocational Rehabilitation (job training) programs?  ☐ No  ☐ Yes, please explain _____
(c) In your opinion, is your patient motivated to return to work? _____

## 7. Physician Information

Attending Physician's Name (Print) _____ Degree MD  Specialty Neurology
Address (No. Street, City, State, ZIP Code) _____
Signature _____   Telephone Number _____ Fax Number _____   Date (MM/DD/YYYY) ___/19

WKAB
GC-1486-17 (6-15) PTD

Claim Number: 2015099

| Patient Name *(Last, First, Middle Initial)* Required |
|---|
| TROIANO, DEBRA |

## 8. Regulation Notice

Any person who knowingly and with intent to injure, defraud or deceive any insurance company or other person files an application for insurance or statement of claim containing any materially false information or conceals, for the purpose of misleading, information concerning any fact material thereto commits a fraudulent insurance act, which is a crime and subjects such person to criminal and civil penalties.

WKAB
GC-1486-17 (6-15) PTD

Page 3



From: Brandon Mahaffy DC   Fax: 17043264533          Fax: (718) 667-3590          Page: 5 of 5      01/14/2010 10:41 AM

Claim Number: 2015099

**aetna®**   Authorization to Share and Use Medical Information

Mail this completed form to:
PO. Box 14560
Lexington, KY 40512-4560
Fax: 18666671987

I allow all doctors, hospitals, other health care providers, pharmacy, pharmacy benefit managers, government agencies, insurers, employers, schools, training facilities, health plans, policyholders, contract holders, vendors, health and benefit plan administrators or their successors ("Records Holders") to give out and discuss my medical information as explained on this Authorization form.

This information includes, but is not limited to, any records or facts about my medical condition, treatment, supplies, employment, vocation, education, training, income, and other insurance coverage including benefits paid ("Information"). This information may also include diagnosis, treatment and education related to drug and/or alcohol abuse, HIV/AIDS or other communicable or sexually-transmitted disease, as well as behavioral health conditions (but does not include psychotherapy notes).

I allow the Records Holders to give my Information to the following individuals or entities ("Benefit Managers"): the employer named below, Aetna Life Insurance Company, their benefit plan or claims administrator(s), their related companies, contractors, investigators, attorneys, and service consultants, authorized union representatives, health care providers treating or evaluating me or my claim, and other individuals or entities involved in administering, evaluating, analyzing and managing the plan or my claim. I allow the Records Holders to discuss and clarify information provided in support of a claim for short term disability benefits, long term disability benefits, salary continuation, leave under the federal Family and Medical Leave Act, local and state leave laws, workers' compensation and/or any other health benefit program, fitness for duty, other work accommodation programs, or leave benefits offered by and through my employer ("Benefits Program").

I allow the Benefit Managers to use, give out or otherwise make available the Information only to evaluate, analyze, manage and/or administer the Benefits Program. I also allow the Benefits Managers to give/make available my Information to any other person or entity if needed to find out whether I am eligible for benefits, to manage my claim, or to run the Benefits Program.

I understand that Information disclosed to Benefit Managers pertaining to certain alcohol or drug abuse treatment or HIV/AIDS or other communicable or sexually-transmitted disease is protected by federal (42 CFR Part 2) and state confidentiality rules and statutes, which prohibit any further disclosure of this information without my express written consent, or as otherwise permitted by such rules and statutes. I understand that a general authorization for the release of medical or other information is NOT sufficient for release of these types of records. Therefore:

☑ If any of my records contain information about alcohol or drug abuse, then, by checking this box, I hereby expressly allow my Benefits Managers to use or give out such information to evaluate, analyze, manage and/or administer the Benefits Program. I understand that the federal rules restrict any use of the Information to criminally investigate or prosecute any drug or alcohol abuse patient.

☑ If any of my records contain information about HIV/AIDS or other communicable or sexually transmitted disease, then, by checking this box, I hereby expressly allow my Benefits Managers to use or give out such information to evaluate, analyze, manage and/or administer the Benefits Program.

The Benefits Managers will tell those receiving Information that the Information is confidential. The Information provided to Aetna will not be used for any purpose other than its intended use stated above. I understand that once my Information is given out as allowed in this form, federal privacy laws may not protect it and it may be re-disclosed by the Benefit Managers.

Unless revoked earlier, I understand that this permission lasts twelve (12) months after my claim is processed or twelve (12) months after the end of my coverage under the Benefits Program, whichever is longer, unless law requires a shorter period. If I change my mind about this Authorization before that time is up, I can tell my Records Holders and Benefit Managers in writing that I do not want them to share any more information. If I revoke my Authorization by telling them in writing to stop sharing information, it will not change any actions they took before I revoked my permission. If I do not sign this Authorization, it will not affect how my health care providers treat me. However, if I do not sign, the Benefits Managers may not be able to review my claim and cannot find out whether I am eligible for benefits. This may result in denial of my request for benefits.

The Information released under this Authorization can be submitted to the Benefits Managers electronically, by phone or fax, or by mail. I know I can see or copy the records given to the Benefits Managers. I agree that a copy of this Authorization may be treated as a signed original.

NOTICE TO RECIPIENT(S) OF INFORMATION:
The Genetic Information Nondiscrimination Act of 2008 (GINA) prohibits employers and other entities covered by GINA Title II from requesting or requiring genetic Information of an individual or family member of the individual, except as specifically allowed by this law. To comply with this law, we are asking that you not provide any genetic information when responding to this request for medical information. 'Genetic information' as defined by GINA, includes an individual's family medical history, the results of an individual's or family member's genetic tests, the fact that an individual or an individual's family member sought or received genetic services, and genetic information of a fetus carried by an individual or an individual's family member or an embryo lawfully held by an individual or family member receiving assistive reproductive services. *Please note that it is appropriate under GINA to provide family medical history when an employee is requesting leave to care for a family member.*

| Claimant's Name | Date of Birth |
|---|---|
| Debra A. Troiano | |
| Employer's Name | Date |
| Ernst & Young LLP | 1/14/19 |
| Claimant's (or Legal Representative's) Signature | Legal Representative's Name and Relationship |
| Debra A. Troiano | |

Form must be signed in order to be considered valid.

WKAB
GR-69211 (2-17) B                                                                R-POD

07/24/19   09:34:04   1-855-893-4357   →   The Hartford   Page 001

PO Box 14869
Lexington, KY 40512
888-301-5615

Facsimile Transmittal Sheet

| To: | From: |
|---|---|
| Allan Perel | The Hartford |
| Date: | Employer: |
| 07/24/2019 | Ernst & Young U.S. LLP |
| Fax Number: | CLAIM NUMBER: |
| 7186673590 | (N/A) |
| | Sender's Phone Number: |
| Re: MS. DEBRA TROIANO | 888-301-5615 |
| Date of Birth: | |
| | Sender's FAX Number: |
| | 833-357-5153 |

The Hartford* Is The Hartford Financial Services Group, Inc. and its subsidiaries, including underwriting companies Hartford Life and Accident Insurance Company and Hartford Fire Insurance Company. Home Office is Hartford, CT. The Hartford is the administrator for certain group benefits business written by Aetna Life Insurance Company and Talcott Resolution Life Insurance Company (formerly known as Hartford Life Insurance Company). The Hartford also provides administrative and claim services for employer leave of absence programs and self-funded disability benefit plans.

Disclaimer:
This message is intended only for the use of the individual or entity to which it is addressed and may contain confidential and/or proprietary information. If you are not the intended recipient or the employee or agent responsible for delivering the message to the intended recipient, you are hereby notified that any dissemination, distribution, or copying of this communication is strictly prohibited. If you received this communication in error, please notify the sender at the phone number above.

NOTICE TO RECIPIENT(S) OF INFORMATION:
Information disclosed to you pertaining to alcohol or drug abuse treatment is protected by federal confidentiality rules (42 CFR Part 2), which prohibit any further disclosure of this information by you without the express written consent of the person to whom it pertains or as otherwise permitted by 42 CFR Part 2. A general authorization for the release of medical or other information is NOT sufficient for this purpose. The federal rules restrict any use of the information to criminally investigate or prosecute any alcohol or drug abuse patient.
The information contained in this document is CONFIDENTIAL. If you have received this in error, please fax immediately to 1-866-667-1987. Thank you.

THE
HARTFORD
PO Box 14869
Lexington, KY 40512

Phone: 888-301-5615
Fax: 833-357-5153

July 18, 2019

Dr. Allan Perel

07/24/19   09:34:19   1-855-893-4357      →          The Hartford       Page 002

ALPHA NEUROLOGY
STATEN ISLAND NY
TEL 718 667 3800
FAX 718 667 3590

Patient:                    Debra Troiano
RE:                         Ernst & Young U.S. LLP LTD Plan
Disability Claim Case No:   2015099

Dear Dr. Perel:

The Hartford Insurance Company is the claim administrator for Ernst & Young U.S. LLP's LTD Plan under which the above named patient has been receiving benefits. In order to properly evaluate MS. DEBRA TROIANO's continued eligibility for LTD benefits, additional information is needed from your office.

I have been asked to review the medical data in Debra Troiano's file to assess functional capabilities for a disability determination. I have reviewed the available medical records and hope that you will be able to help me further understand functional levels.

As you know, Debra Troiano is a 59 year old female formerly employed as Retirement Benefit SR Associate and out of work since 2/23/2009 due to Multiple Sclerosis (relapsing remitting) as well as Bi-polar and carpal tunnel syndrome.

06/26/2018 LABS: Glucose 104 (65-99). JCV Antibody 2.20 High (> 0.40 positive).

07/19/2018 Brain MRI: Comparison 06/15/2016. IMP: Findings compatible with given history of multiple sclerosis similar to prior study. There are no enhancing lesions. There are no additional lesions. Moderate maxillary sinus inflammatory changes and adenoid hypertrophy.

07/19/2018 Cervical Spine MRI: Comparison 04/14/2015. IMP: Stable nonenhancing plaque at C3 level. There are no additional plaques identified. Multilevel degenerative changes similar to the prior study. There is associated central canal stenosis resulting in mild cord impingement at C4-5 and C5-6. There is foraminal stenosis at multiple levels.

07/19/2018 Thoracic Spine MRI: Comparison 04/14/2015. IMP: There are no cord abnormalities identified.

08/01/2018 OVN by Dr. Allan Perel, Neurology: States she wants to get off Tecfidera, misses a lot of doses because the medicine gives her diarrhea. Patient states her one and only exacerbation was around 10 years ago, and she has been stable since. Her main MS symptom is cognitive issues – memory issues, trouble getting words out, etc. She finds no impairment in mobility. Unchanged fatigue. Patient failed Avonex, Copaxone, and Tecfidera.  Current medications: Tecfidera 240mg 2x/day. Review of Systems (ROS ): Inability to concentrate, numbness and tingling, muscle weakness, balance disorder, neck pain, increased appetite/weight gain, night sweats, anxiety/panic, depression, bruising, diarrhea. Exam: well groomed, no LE edema. AAO x3. Head, Neck, CN, Cerebellar, Motor, Sensory, Gait are all benign. Assessment: RRMS without exacerbation, stable, although has significant side effects with Tecfidera causing noncompliance. JCV positive. EDSS = 1.0. MRI brain 7/2018 stable lesions. MRI C-spine 7/2018 stable lesions. MRI Tspine (no date) no lesions. Discussed Gilenya v. Aubagio. Patient does not want higher efficacy agents at this time. Patient wants the oral agent with the least risk of PML. To discontinue Tecfidera once Aubagio approved. Follow-up 1 month.

01/14/19 APS (Attending Physician Statement) by Dr. Allan Perel, Neurology: For medical reasons, patient will need to be absent from work due to a disability beginning on (blank) and ending on (patient is disabled). Primary diag: Multiple sclerosis. Medication/s: Tecfidera. Impairment from medication effects: not stated. Treatment summary: follow up office visits, MRI testing, continue medication. LOV/NOV: blank. Symptoms: weakness of upper extremity and lower extremity, fatigue, cognitive issues. Abilities and Limitations: [X] No ability to work.

05/20/2019 TPC (telephone contact), Debra Troiano reports she did a lot of math in her old job and that she could not do that. She has a lot of pain in her hands, they get numb frequently. She has a lot of fatigue, reports she is very weak, cannot open certain jar (sic). Self-reports she has only 1 functioning kidney, saw Dr. Kleiner in Staten Island but has not gotten a new provider in CT (this is not corroborated on neurology medical records and no medical records by Dr. Kleiner as of the time of this clinical review). Reports she does not have any short term memory and in her daily routine she is ok because her husband does a lot. She is on Tefidera 2x/day, main side effect is explosive diarrhea but she does not want to go back to the shots.

05/29/2019 LABS: Glucose 111 (65-99), Hgb 12.0 (11.7-15.5), Hct 34.9 (35-45), Lymphocytes 1557 (850-3900), Vit B12 is 1554 (200-1100).

06/19/2019 OVN by Dr. Allan Perel, Neurology: 59 y/o right handed female with diagnosis of relapsing/remitting multiple sclerosis presents to follow up visit. Patient states she feels stable on Tecfidera. States she experiences persistent diarrhea since starting Tecfidera. Patient admits to stable parestheslas which are episodic. She complains of episodic pain throughout her body. She denies weakness, visual disturbance. PMH: Multiple sclerosis, carpal tunnel syndrome. Social Hx: Former smoker. ROS: numbness and tingling, balance disorder, low back pain, anxiety and depression without suicidal ideation, muscle cramping, joint stiffness, and joint pain, fatigue. Exam: Patient has Tinel's sign at bilateral wrists. Reflexes 3+ and symmetric (increased but normal). Alert and oriented x3. Speech is fluent. Cranial nerves 2-12 intact. One beat of rotary nystagmus (rhythmic, often rapid, involuntary eye movement). Motor strength 5/5 overall. Normal bulk and tone. Sensory is intact. Gait is steady. Diagnosis: Relapsing/ remitting multiple sclerosis, Paresthesia/ weakness, Fatigue. Plan: Continue on Tecfidera 240mg 2x/day. Side effects including with the PML discussed at length. Recommend strongly MRI of the brain/ cervical spine without and with gadolinium to assess new/ enhancing MS lesions. Patient states she would like to hold on MRI at this time and perform at next visit. Patient was instructed to follow up with primary care physician regarding the positive review of system findings. I suggested a GI evaluation for her persistant diarrhea. To note, lymphocyte count was 1557. Suggest follow up 3-4 months at which time I will order MRI of the brain/ cervical spine w/wo gadolinium.

Based on this data, I would like to ask for your assistance in determining Debra Trolano's current level of function to be sure that I am considering all of the medical data in making an assessment of her functional capacity.

Assessment: There is a lack of available medical evidence for functional impairment to general or specific activities. No manual dexterity, limitation of fine motor skill deficits are observed or documented. No upper or lower extremity strength deficits or gait/station abnormalities or inability to operate hand/foot controls are noted. No sitting, standing or walking intolerance is reported or observed. No documentation that claimant was observed using any assistive device or brace, or was accompanied by anyone. There is no documented report or observation of cognitive impairment or impairing medication effect. There is no documentation or observation by provider that claimant was observed with mental or physical tiredness (fatigue). No documentation or observation of weariness, sleepiness, drowsiness, exhaustion, lethargy.

If you are in agreement with this assessment, please sign and date below.

Signature: _____       Date: 7/24/19
          Dr. Allan Perel, MD

If you do not agree with this conclusion, please provide your clinical rationale with test results and any other evidence that would help us to understand what would prevent Debra Trolano's level of full time functional capacity.

If you provide a hand-written response, please do so legibly and include the claim number on any separate correspondence.

If there is a fee for your efforts, please provide your tax ID number with your invoice.Please respond by fax by August 02, 2019 to Fax # 18666671987.

Thank you again for your time and consideration in this matter.

Sincerely,

LINDA (JAN) MOHI, RN
Medical Case Manager
The Hartford Insurance Company

---



PO Box 14560
Lexington, KY 40512-4560
SHANNON MOORE
Senior Technical Specialist
Phone: 1-866-326-1380
Fax: 1-866-667-1987

11/17/2011

DEBRA TROIANO
7760 AMBOY ROAD
STATEN ISLAND NY - 10307

| | |
|---|---|
| Group Control No: | 0818967 |
| Employer: | Ernst & Young U.S. LLP |
| Employee: | MS. DEBRA TROIANO |
| Disability Claim Case No: | 2015099 |

Dear Ms. Troiano:

This letter is to inform you that Ernst & Young U.S. LLP's Long-Term Disability Program has determined that full battery neuropsychological testing will be necessary for further disability evaluation. You will be contacted shortly with the details of this process by the neuropsycholgical testing vendor.

Once the date has been established, the vendor will communicate it to you by letter. If it is necessary for you to reschedule this, you must do so prior to the appointment date indicated in your letter. You may reschedule only once.

**Please note: Failure to attend may result in suspension or denial of benefits.**

If you have any questions, please call 1-866-326-1380.

**Please bring a drivers license or other photo ID when you attend the testing.**

Sincerely,

SHANNON MOORE
Senior Technical Specialist
Aetna Life Insurance Company

001016 J011364 002165 GR-67989-6



# ACCESS MEDICAL EVALUATIONS, INC.

P.O Box 510837
Livonia, Michigan 48151
Phone: (734) 425-1102
170
Fax: (734)425-1042
Email: AccessEvaluation@aol.com

December 8, 2011

**Debra Troiano**
**7760 Amboy Rd.**
**Staten Island, NY 10307**

Kindly be advised that you have been scheduled for a Neuropsychological Evaluation at the request
of Aetna at the following Doctor's office:

**Ezra S. Gampel, PhD**
**142 Washington Ave.**
**Staten Island, NY 10314**

**Your appointment date and time is as follows**:
**Appointment Date:** Monday, December 19, 2011
**Appointment time:** 10:00 a.m.

- Please note that this evaluation will take approximately **6-8 hours.**
- Please bring your **reading glasses (if necessary)** with you to the evaluation.
- Please bring **a list of your current medications** with you to this evaluation.
- Please bring your **Photo I.D.** with you to this evaluation.

➢ Failure to appear at this examination may result in termination of disability benefits.
➢ The appointment is at no cost to you. **Do Not provide billing information or present your**
  **Health Insurance card to the provider's office.** Payment arrangements have already been
  made with the provider's office.
➢ This examination cannot be cancelled or rescheduled without prior authorization of Aetna.
  You may contact Aetna by calling: **800-688-6820**

It is imperative that you call Access Medical Evaluations, Inc. and confirm your appointment at
(800) 375-0270. If you are unable to keep your appointment for any reason it is necessary to call at
least 48 hours in advance of your appointment date and time. We ask that you be punctual for your
appointment. If you have any questions please feel free to contact us at the above number.

Sincerely,
Access Medical Evaluations, Inc.

©Access Medical Evaluations. Inc

## EZRA S. GAMPEL, PH.D.
*Licensed Psychologist*
*142 Washington Avenue*
*Staten Island, New York 10314*
Telephone: 917-968-0228
E-Mail: dr.e.gampel@gmail.com

NY: PSY 05607
NPI 1169548079

## NEURO-PSYCHOLOGICAL EVALUATION

NAME:                    Debra Troiano
DATE OF BIRTH:
DATE OF EVALUATION:   12/19/11
AGE:                     51 years, 8 months
CASE #:                  2015099
EXAMINER:                Ezra S. Gampel, Ph.D.


## REASON FOR REFERRAL
Debra Troiano, a 51 year old woman, has been diagnosed with Multiple Sclerosis and Bipolar Disorder. She is being seen to determine her present level of functioning.

To Whom It May Concern:

As per your request, the following instruments were used in completing a neuro-psychological evaluation.

## INSTRUMENTS USED:
1) Observation of Debra
2) Interview with Ms. Troiano
3) Stanford Binet Intelligence Scale 5th Edition
4) Wechsler Adult Intelligence Scale III - Digit Span and Digit Symbol
5) Wechsler Memory Scale III
6) Bender Visual Motor Gestalt Test, Copy and Memory
7) Neuro-Psychological Impairment Scale
8) Thematic Apperception Test
9) Rorschach Ink Blots
10) Projective Drawings

1

Debra Troiano is a 51 year 8 month old woman who came to this evaluation by herself. She stated that she used a GPS in order to find her way and had no difficulty in coming to the today's appointment. She presented as a well dressed woman who was very kempt and appeared to take good care of herself. She had no difficulties in walking and was able to comply with all directions given to her throughout today's interview and evaluation.

Ms. Troiano has had a diagnosis of Multiple Sclerosis since 2007. The precipitating cause was that she felt her hands and fingers were continually tingling and causing her discomfort and pain. An MRI indicated signs typical of a diagnosis of Multiple Sclerosis. She has been under treatment since then. Ms. Troiano was diagnosed with mood disorders and other psychiatric symptoms about a decade earlier. She has been having significant difficulties in dealing with her children, especially her daughter. She started receiving psychotherapy at that time. Subsequently she has had both psychotherapy as well as medication to deal with her emotions.

Ms. Troiano indicated that she was always known as a very brilliant student. She received top honors, including an American Legion Scholarship Award, when graduating PS 115. She was in special classes in Junior High School and also did very well in High School. However, at the age of 13 Ms. Troiano's mother attempted suicide and was hospitalized briefly. Subsequent to that the relationship between Ms. Troiano and her mother became significantly more difficult. When Ms. Troiano graduated High School she wanted to go to a sleep away college but her mother would not allow her. She then made the decision to not go to college and in fact never attended college at all. At the age of 19 she got married for the first time and moved to West Virginia to a man who was 29 years old. She had 2 children, one born in 1981 and one born in 1985. A few years later Ms. Troiano and her first husband were divorced. The son stayed with the father while the daughter stayed with the mother with ever increasing difficulties in their relationship. By 2001 the daughter left her mother's home and moved in with the father.

Ms. Troiano returned to the New York area where she began to repair her relationship with her mother who has since passed away. She also states that she has been repairing the relationship with both of her children and that she does have a reasonably good relationship with them. They still both live in North Carolina. Ms. Troiano was remarried to her present husband. It was at that time that she started feeling symptoms of tingling which resulted in the diagnosis of Multiple Sclerosis.

Ms. Troiano describes herself as a person who does not enjoy a large amount of socialization. She tends to like to be more by herself and in a quiet situation. It takes her a great deal of time to learn to trust someone. Once she does trust that person she can be very open, according to her report, and will enjoy their company. However, it does take a great deal of time. She also sees herself as a frugal person who does not spend money that she does not have and who cares about her financial security.

In March of 2009 Ms. Troiano had a flare-up of the Multiple Sclerosis and was given steroids. She was diagnosed with having a steroidal psychosis which required hospitalization. She described her behavior as becoming frighteningly different from what she was used to. Instead of being frugal she began to start shopping without control. Instead of being reserved and somewhat socially anxious, she had become bubbly and was more highly social. She was taken off of the

2

steroids and is now on several different medications. They include medications both for her Multiple Sclerosis as well as for the emotional issues. She recognizes that she has been diagnosed with Bipolar Disorder due to the manic episodes. However, she generally sees herself as tending towards being more on the depressed side. She is presently on Seraquil, Lamictal, Zoloft and Copaxone.

## PRESENT BEHAVIOR AND MENTAL STATUS

Ms. Troiano indicates that she finds that she has had a great deal of difficulty in remembering things. When she works on a task she has trouble when she has to do more than a step or two. She forgets what she is doing and loses focus. She further states that when she feels any level of stress her performance decreases markedly.

When Ms. Troiano was speaking to this examiner she was able to answer questions quite coherently and was able to engage with the examiner. However, she had significant problems with word finding. There were many times when she wanted to say a word and no word came out or a word came out that was similar sounding but did not convey the meaning that she was trying to say. Generally she did not show any emotional changes but when word finding issues occurred, or when she had difficulty in solving different problems, she would become more negative towards herself. It was interesting to note, however, that as soon as a minute or two passed after the conversational point had been made Ms. Troiano had forgotten a good deal of what had been said or asked and would then repeat herself. Throughout today's evaluation present in the moment functioning tended to be substantially better than any other functioning when there was a delay of even 2 or 3 minutes. Ms. Troiano spoke about the effect of her memory on her job performance. She stated that when she went back to work for a period of time in 2009, she was unable to remember what she was supposed to do. She would become progressively more confused and more upset. She then felt that she was unable to continue in her work because of the change in her mental status,

Ms. Troiano readily went to the evaluation area. She was cooperative throughout all of today's evaluation and worked at all tasks to the best of her ability. She tended to be quiet when she was working but when she had a difficulty she became much more overwhelmed and used negative language to describe herself. She also did not know exactly what to do to fix the problem and therefore after 1 or 2 attempts she would give up. As soon as she gave up she became more relaxed and one could then start on a different item with her. When this examiner tried to push with items that became more difficult the level of frustration became much greater and she had more difficulty in remaining motivated on the task.

## INTELLECTUAL FUNCTIONING

On the Stanford Binet Intelligence Scale 5th Edition Ms. Troiano scored in the low average range for both non-verbal and verbal IQ yielding a full scale IQ within the low average range. Ms. Troiano had a number of scores in the average range and one score in the mildly deficient range. Tasks that she was able to conceptualize into a sequence or mathematically, or reflected already gained knowledge, scored in the average to above average range. Thus, she gave definitions to the average range. She was able to put numerical sequences presented visually at the average range. In contrast tasks that required analysis of detail were extremely difficult for her. In non-verbal fluid reasoning, her lowest score in the mildly deficient range, Ms. Troiano

3

was not able to conceptualize the idea of using the underlying pattern concept and applying it to another pattern in a test of matrices. When she had to recognize anomalies in pictures she did not know how to search the array in an efficient manner. She had the same type of problem in solving verbal math problems. She was unable to remember the instructions and complete the task. Therefore she made many errors and that is why her verbal quantitative reasoning score is in the borderline impaired range while her non-verbal is in the average range. In verbal fluid reasoning one is asked to perform analogies as well as describe anomalies in stories that are being told. Ms. Troiano had no difficulties with understanding what to do but was unable to find the words. She did score well enough to score in the average range.

The implications of this evaluation are that Ms. Troiano's statement that she was likely a bright student in elementary school and Junior High School is supportable. She shows signs of skills that would indicate that level of performance. Her difficulties with detail analysis as well as in working with memory and multiple tasks results in scores that have depressed quite substantially. When one speaks with Ms. Troiano one gets the impression of an individual who is higher functioning than her scores today would indicate.

MEMORY TESTS
The Wechsler Memory Scale as well as the Bender Visual Motor Gestalt was given in this regard. In the Bender Visual Motor Gestalt one is required to copy the figures that are being presented. Then the person is asked to draw them as best as they can by heart. On average for 9 figures an adult should be able to remember 7 figures accurately. On today's evaluation Ms. Troiano was able to copy the figures with some simplifications. There were difficulties with size and with planning out the use of space. However, she was only able to remember 4 items with significant changes. For example, in drawing a circle rhombus combination she remembered them as separated rather than together. She drew the wrong number of dots in a series of dots and circles. Other figures were drawn that had no relationship to any of the figures that were presented. This Bender is indicative of significant memory difficulties.

On the Wechsler Memory Scale immediate memories and working memory all scored within the average range. Once there was a delay, however, scores dropped to the bottom of the borderline impaired range. This difference is highly significant and indicates that as soon as there is any distracters Ms. Troiano's ability to remember and use information becomes severely impaired.

TESTS OF NEURO-PSYCHOLOGICAL IMPAIRMENT
The Neuro-Psychological Impairment Scale was given to Ms. Troiano. This is a paper and pencil test in which different areas of functioning are tested. It includes 4 different tests to recognize issues of validity. On the Neuro-Psychological Impairment Scale Ms. Troiano achieved a T score on a symptom intensity measure of 69 indicating moderate to high impairment. In the sub-areas of impairment high scores were noted for memory, attention and verbal learning. Moderate issues were noted for cognitive functioning. Health issues, frustration tolerance and academic issues were noted to be within the average range. Thus she did not score high on all areas. There were specific areas related to her own reported symptoms in which the impairments also show a Neuro-Psychological Impairment Scale testing. In terms of validity tests there are 4 tests. The first one is called the Subjective Distress Distortion Index. In this a person scores on the Wechsler Adult Intelligence Scale for digit span and digit symbol yields a predicted score then

4

her actual score is compared to it. According to this her T score was within appropriate limits indicating no extremely subjective distortion. Within other validity scores a response in consistency was found not to be a factor. Affective there was some moderately high T scores for defensiveness and emotionality. The scores are at the very low end of the moderately high level and could easily be due to her own history of emotional issues. It thus appears, from this evaluation, that the neuro-psychological symptoms that she is reporting are related to her underlying neurological impairments.

EMOTIONAL FUNCTIONING

Ms. Troiano presents as a person who behaved in a very appropriate and proper manner throughout the interview. As she became more comfortable she started to smile more and her body posture began to relax. She also was more willing to speak about the difficulties that she has in following the requests of her husband when he gives her chores or tasks to do since she finds any activity very difficult to complete. The Rorschach results are in line with the way in which Ms. Troiano did describe herself. She showed a very high isolation depth and difficulties with relating to people. She finds herself being worried about how other people will see her and she restricts her openness to experience. She tends to be emotionally withdrawn. All of these behaviors are ones that Ms. Troiano indicates and endorses as having happened prior to the onset of the Multiple Sclerosis. She states that these activities never affected her work performance and in fact she was quite proud of her work performance. She appears to have lost belief in her own ability to succeed in tasks that will be given to her. She therefore does have a negativistic perspective on how any training or demand will go when she has to actually perform it. Although she won't show the emotions, she has a very negative future orientation about her own skills. She therefore wants very much to see herself as being able to be at peace where there are no demands made on her. She is aware enough of her own disabilities that want a structural world where she does not have to confront her lack of skills.

Her defensiveness and isolation make it more difficult for her to appreciate what other people are saying and to work with them. In this respect there is an emotional component. Ms. Troiano's lack of trust and self-isolation results in it becoming far more difficult for her to try new or different techniques that might be somewhat helpful. At present the loss of memory is likely to make it very difficult for her to work.

ANSWERS TO QUESTIONS

1. Ms. Troiano did not demonstrate emotional decontrol. She tended to remain under control throughout the entire evaluation. As stated earlier, over time she did become more relaxed and more emotionally labile. She was less defensive. There were no suggestions of symptom magnification.

2. There are several areas of significant cognitive deficits. The first is in delayed memory. She is able to remember items in short-term memory without any difficulty and in the average range. As soon as there is any interference, or even time passing, her performance decrement is remarkably high. This is shown both in terms of the Wechsler Memory Scales, the Bender and in general conversation. The second area is an inability to solve multiple step problems or work in a situation where she has to maintain awareness of multiple details towards a conclusion. In this respect she has difficulty in interpreting information which was not clearly structured for her. The last area is in word

5

finding and cognitive categorization. Ms. Troiano was unable to remember all the components that would lead to knowledge of a particular category. Even when she was engaged in a regular conversation there were many times where she could not find the right word or said words that were totally unrelated, except by clang association to the actual word that she was seeking. This did not appear to be due to any emotional issues.

3. Reality testing impairments were not noted. There is a level of isolation and paranoia which precedes the events of the onset of the Multiple Sclerosis. It is quite possible, with the MS, this level of discomfort with others and to the outside world, became somewhat magnified. Given the fact that she has lost a substantial number of skills this is not surprising. There were no signs within the Neuro-Psychological Impairment Scale or any of the sub-tests that would indicate any substantial malingering or magnification.

4. Ms. Troiano was dressed well. She had good personal hygiene. Her eye contact was good. She knew how to engage and she was able to maintain appropriate social behavior throughout the entire evaluation. The concerns really occurred in actual job performance.

5. It is hard to imagine how Ms. Troiano could work in a job where attention to detail or memory is required. She would also have significant difficulties if she had to communicate with other people due to the difficulties with word finding. Jobs that did not require this would likely be able to be done. This examiner did not notice any physical impairment that substantial in nature.

6. If Ms. Troiano were to return to her previous job it is doubtful that she would be able to actually complete it given the nature of the results that she had. She indicated that she worked on retirement accounts for Ernst and Young. This requires a great deal of mathematical facility which she does have as well as being able to use the numbers of different contexts which she is not likely to regain. It seems that this is part of the process of the Multiple Sclerosis. As there is no known cure or way of resolving the problems of MS, the restrictions of not working in a position requiring her to communicate with others, and not in a position requiring math skills would have to be in place permanently.

Very truly yours,

Enya S. Genupel, Ph.D

6

ADDENDUM

Debra Troiano

STANFORD BINET INTELLIGENCE SCALE 5TH EDITION

|  | NON-VERBAL IQ – 83 | VERBAL IQ - 91 |
|---|---|---|
| Fluid Reasoning | 4 | 9 |
| Knowledge | 7 | 11 |
| Quantitative | 10 | 6 |
| Visual Spatial | 8 | 9 |
| Working Memory | 12 | 8 |

WECHSLER MEMORY SCALES

|  | IMMEDIATE | | DELAYED |
|---|---|---|---|
| Auditory | 94 | | 80 |
| Visual | 103 | | 72 |
| Memory | 98 | Auditory Recognition | 70 |

General Memory - 70
Working Memory - 91

NEURO-PSYCHOLOGICAL IMPAIRMENT SCALE

GMI – 115
TIC – 51
SIM – 69       T-SCORE 69 – Moderate to High Impairment

VALIDITY – T SCORES
Defensiveness – 62 – Moderate
Affective – 66 – Moderate
NIS Inc – 55 Average – No response

IMPAIRMENT SCALES T SCORES
Critical – 57 – Average
Cognitive – 69 – Moderate Impairment
Attention – 80 – Very High Impairment
Memory – 71 – High Impairment
FRU – 48 – Low
L-V – 74 – High Impairment
ACD – 60 – Borderline

7

Page 2
ADDENDUM -- Debra Troiano

WECHSLER ADULT INTELLIGENCE SCALE II
Digit Span -- 11
Digit Symbol -- 4

Predicted GMI -- 90
Actual -- 115

Subjective Distraction Index -- 57 T Score -- Within appropriate limits


BENDER VISUAL GESTALT TEST
Copy -- 5 points -- 4 simplifications
                    1 rotation

Recall -- 4 items remembered with distracters
          3 other items unrecognizable -- Severe Impairment

Case 3:20-cv-00511-AVC Document 8 Filed 04/29/20 Page 49 of 51



PLAINTIFF'S
EXHIBIT
5

THE
HARTFORD

PO Box 14578
Lexington, KY 40512-4578

Phone: 888-301-5615
Fax: 1-833-357-5152

March 10, 2020

THOMAS W. BUCCI
WILLINGER WILLINGER AND BUCCI PC
855 MAIN ST 5TH FLOOR
BRIDGEPORT CT - 06604

Dear Mr. Bucci:

We finished reviewing the appeal for Long-Term Disability ("LTD") claim (claim # 2015099). After review, we agreed with the original decision to terminate Mrs. Debra Troiano's benefit as of August 15, 2019.

Please refer to the August 15, 2019 letter that listed the evidence from your claim file, as well as the applicable Policy provisions and guidelines, which were relied upon to make that determination. That decision was based upon a complete review of the information in your claim file and communicated that Ms. Troiano no longer meets the test of disability, as outlined by the Policy.

The information you, Mrs. Troiano and her doctors sent shows Mrs. Troiano ceased work as of November 24, 2009 due to Multiple Sclerosis (MS). The LTD benefits were approved and paid through August 14, 2019 and were terminated as the review performed at that time did not support Mrs. Troiano met the any occupational test of disability, as outlined in the plan.

Upon appeal, a significant amount of medical information was received. The new information, in addition to information already contained in the claim file were reviewed by independent physicians who specialize in Psychology and Neurology.

From a psychological perspective, the independent reviewer attempted to discuss the case with Joanne Klages, LCSW and Dr. Ivan Lendvai. The reviewer was unsuccessful in reaching either provider as Ms. Klages did not return the calls and Dr. Lendvai's number was not in service. You were notified in writing of the unsuccessful attempts as well as the fax sent to Ms. Klages for a response to peer review should a disagreement occur. No response to the peer review was received. The independent reviewer found no medical support to validate the presence of a psychiatric condition. The medical records in the file are void of any recent medical records from a psychological perspective therefore there is no support for any diagnosis or impairment. Since Ms. Klages did not respond in writing to our request, no further analysis from a psychological perspective was completed. The written notification sent to you also advised of our inability to obtain forwarding information for Dr. Lendvai therefore our efforts to obtain further input by that provider were ceased.

From a neurological perspective the independent reviewer attempted to discuss the case with Dr. Perel but was unsuccessful. A copy of the report was sent to Dr. Parel and asked for a response should he disagree with the conclusions rendered. You were also notified of this in writing. We received additional information from Dr. Perel for this case therefore the file was reviewed in addendum twice.

The independent reviewer did not find support for a functional impairment for the entire period in question. The file reflects very stable multiple sclerosis and the Expanded Disability Status Scale (EDSS) score was quite low as documented between a zero and a one which is reflective of no overall impairment. The neurological examinations have been essentially normal with no significant deficits documented in the record. There have been no repeat cognitive evaluations since 2011. It was noted that the 2011 testing indicated a cognitive impairment the testing itself was quite limited in scope. Magnetic Resonance Imaging (MRI) studies have been stable over many years and there has been no escalation in MS therapy.

Ms. Troiano had reports of weakness of the upper and lower extremities as well as significant fatigue however they are not explained by the medical data in the file. The stable examinations over the past several years and as of June 19, 2019 Mrs. Troiano had normal strength indicated on examination. There were no sensory deficits noted in the file and she was not being treated pharmacologically for fatigue. The records do not reflect any

states increasing weakness which is precluding her ability for full time functionality this is not indicated in any of the treatment notes. There has been no suggestion of changes in therapy to counteract any increase in symptomology. The September 23, 2019 physical examination did show normal strength in all four extremities proximally and distally with normal reflexes except for a brisk left knee reflex. The gait testing was normal as was sensory and cerebellar testing. There were positive findings on the cervical spine MRI which showed spondylosis with moderate cord compression and multilevel narrowing in addition to stable non-enhancing plaque at C3. The examination also showed full range of motion of the cervical spine and no tenderness. Despite the MRI findings there would not be any specific restrictions and/or limitations supported that would preclude Ms. Troiano from performing any reasonable occupation.

While the 2011 neuropsychological testing did indicate the presence of some cognitive dysfunction it was limited in scope and is significantly outdated. The independent reviewer noted it is unlikely there would be significant improvement from that examination however it is difficult to determine, exactly, what Mrs. Troiano's actual cognitive status was as of August 15, 2019 as there has been no updated assessment ordered or performed.

The EMG studies are positive for bilateral carpal tunnel syndrome however Dr. Perel did not recommend any specific treatment such as wrist splints or referrals for surgical consult. There is no indication in the file that the CPS would have an impact on the claimant's functionality. Additionally, it is noted in the file that she experienced diarrhea as a result of her Tecfidera medication however she declined switching medications therefore it is unclear how, if at all, severe the symptomology was.

The operations review identified alternate reasonable occupations Mrs. Troiano would have the capacity to perform and that would provide a reasonable wage under the terms of the plan. Our review does not change the prior functionality assessed therefore the prior vocational review remains valid.

Based on the above review, the appeal determination is the medical information does not support a functional impairment that would preclude any reasonable occupation therefore we are upholding the original decision to terminate benefits effective August 15, 2019.

**Not Disabled Any Occupation:**
On an ongoing basis, the Analyst should compare the:

- Policy definition of Disability; and
- Medical and vocational information

The Analyst should recommend a claim be terminated at or beyond Test Change when:

- Occupation(s) are identified that the employee is qualified to perform that are within the confirmed restrictions and limitations

**If I don't agree, what can I do next?**
Since we've made our final decision, no other action will be taken by us. To ask for a copy of all the documents we have, fax us a letter to **1-833-357-5152** or send it to this address:

The Hartford
Ernst & Young U.S. LLP Appeals
PO Box 14578
Lexington, KY 40512-4578

Make sure your request includes:

- Your name and employee ID number (if you have one)
- The name of your employer
- Your claim number **(2015099)**

**Required ERISA notice:**
The Employee Retirement Income Security Act of 1974 (ERISA) allows us to make a final decision no more than 45 days after we receive your timely appeal. The time for final decision may be extended for one additional 45 day period provided that, prior to the extension, we notify you in writing that an extension is necessary due to special circumstances, identify those circumstances and give the date by which we expect to render our decision.

If your claim is extended due to your failure to submit information necessary to decide your claim on appeal, the time for decision shall be tolled from the date on which the notification of the extension is sent to you until the date we receive your response to the request. We may also toll the time for a decision to allow you a

reasonable opportunity to respond to new or additional evidence or a new or additional rationale. Tolling will begin on the date that we provide you with new or additional evidence or a new or additional rationale, and end when we receive the response or on the date by which we requested a response, whichever comes first.

All claims and appeals for disability benefits are to be adjudicated in a manner designed to ensure the independence and impartiality of the persons involved in making the decision. The role of the Analyst, Analyst, Director, and Appeals Specialist is to undertake fair and accurate claims assessments with the goal of paying all valid claims. Financial self-interest, either the company's or that of the Claims or Appeals staff, must not influence individual claim management.

If you don't agree with the final appeal decision, you can file a lawsuit under section 502(a) of a law called ERISA. If you wait too long, you may lose your right to file a lawsuit based on this claim. Make sure to check your plan brochure or summary plan description to see if it gives you the time frame to file a lawsuit. You will have until three (3) years from the date of our final appeal decision letter, or until March 10, 2023, unless the policy allows for more time, to take legal action to recover payment if you disagree with our decision.

Should you wish to take this matter up with the New Jersey Department of Insurance you may contact them at:
Office of Insurance Claim Ombudsman
Department of Banking and Insurance
P.O. Box 472
Trenton, NJ 08625-0472
Telephone: **(800) 446-7467** or **(609) 292-5360**
Telefax: **(609) 292-2431**
E-mail: ombudsman@dobi.state.nj.us

If you have questions or need help, you can call us at **888-301-5615** between 8:00 AM and 8:00 PM ET, Monday through Friday or visit us online at **https://abilityadvantage.thehartford.com**. We're here to help.

Sincerely,

Jessica Nyby
Sr. Appeals Specialist

The Hartford® is The Hartford Financial Services Group, Inc. and its subsidiaries, including underwriting companies Hartford Life and Accident Insurance Company and Hartford Fire Insurance Company. Home Office is Hartford, CT. The Hartford is the administrator for certain group benefits business written by Aetna Life Insurance Company and Talcott Resolution Life Insurance Company (formerly known as Hartford Life Insurance Company). The Hartford also provides administrative and claim services for employer leave of absence programs and self-funded disability benefit plans.

Enclosure:
Availability of Language Services

